IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br>　　　　　　　　Plaintiff,<br>　　v.<br><br>CENTENNIAL HEALTHCARE CORP.,<br>GENERAL STAR INDEMNITY COMPANY,<br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH, PA and<br>AMERICAN INTERNATIONAL SPECIALTY<br>LINES INSURANCE COMPANY,<br>　　　　　　　　Defendants. | Case No. 1:05cv2012 |

)
)
)
)
)
)
)
)
)
)
)
)
)

CENTENNIAL HEALTHCARE CORP.,
　　　　　　　Plaintiff-in-Counterclaim
　　v.

EVANSTON INSURANCE COMPANY
　　　　　　　Defendant-in-Counterclaim

)
)
)
)
)
)
)
)

CENTENNIAL HEALTHCARE CORP.,
　　　　　　　Cross-Claimant
　　v.

GENERAL STAR INDEMNITY COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA  and
AMERICAN INTERNATIONAL SPECIALTY
LINES INSURANCE COMPANY
　　　　　　　Cross-Respondents

)
)
)
)
)
)
)
)
)
)
)
)

GENERAL STAR INDEMNITY COMPANY,   )
           Cross-Claimant         )
    v.                            )
                            )
CENTENNIAL HEALTHCARE CORP.       )
           Cross-Respondent     )
                            )

## GENERAL STAR INDEMNITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CENTENNIAL HEALTHCARE CORP.'S  COUNTERCLAIM AND <u>CROSS-CLAIM FOR DECLARATORY JUDGMENT</u>

Defendant and Cross-Respondent, General Star Indemnity Company (hereinafter "General Star"), by counsel, and in support of its Motion to Dismiss Centennial Healthcare Corp.'s Counterclaim and Cross-Claim for Declaratory Judgment (hereinafter "Cross-Claim") filed in this matter, hereby submits the following Memorandum of Law:

## I.    INTRODUCTION AND BACKGROUND

This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, brought initially by Plaintiff, Evanston Insurance Company ("Evanston"). Under its Complaint, Evanston seeks a determination concerning the respective rights and obligations of the parties under an insurance policy which it issued to Defendant and Cross-Claimant Centennial Healthcare Corp. ("Centennial") in connection with numerous claims for personal injury asserted against Centennial by residents of nursing home facilities Centennial operates, or operated, in jurisdictions throughout the country.  Defendants General Star, National Union

Fire Insurance Company of Pittsburgh, PA ("National Union"), and American International Specialty Lines Insurance Company ("AISLIC") also issued certain policies of insurance to Centennial for different policy periods, and on different terms and conditions than Plaintiff Evanston.

On or about December 20, 2002, Centennial filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Northern District of Georgia, Bankruptcy Case Nos. 02-74974, et al, (Jointly Administered) (the "Bankruptcy Case"). Numerous personal injury claims have been asserted against Centennial by or on behalf of residents in Centennial nursing homes. Many of these claims resulted in lawsuits against Centennial, in which the plaintiffs sought recovery for injuries they allegedly suffered as the result of Centennial's conduct. These lawsuits have been commenced in courts in several states throughout the county (the "Underlying Claims"). The litigation arising out of the personal injury claims asserted against Centennial was stayed as a result of Centennial's bankruptcy filing.

Eventually, in June, 2004, the Bankruptcy Court approved a Third Amended Joint Plan of Reorganization (the "Plan"). The Plan set forth, among other things, a procedure for handling the Underlying Claims asserted against Centennial. Thereafter, Plaintiff Evanston filed a motion in the Bankruptcy Case seeking, in part, authorization to file this Declaratory Judgment action. By Order entered July

13, 2005, the Court in the Bankruptcy Case ruled that Plaintiff was authorized to proceed with the filing of this Declaratory Judgment action in the United States District Court for the Northern District of Georgia.

In response, Defendant, Counterclaimant and Cross-Claimant Centennial filed the Cross-Claim which is the subject of General Star's Motion to Dismiss. The Cross-Claim does not seek a declaration of the rights and obligations of Centennial and General Star under the policies of insurance issued to Centennial by General Star.  Instead, it seeks a declaration of the rights of Centennial, Evanston, General Star, National Union and AISLIC under the Plan.  (See Centennial Healthcare Corp. Counterclaim and Cross-Claim for Declaratory Judgment at ¶ 4 (hereinafter, "Cross-Claim at ¶ __")).  Nothing set forth in the Cross-Claim alleges any reason why the Bankruptcy Court presiding over the Bankruptcy Case is not capable of issuing such a declaration, nor why Centennial cannot, or has not, sought such relief in the Bankruptcy Case.  Perhaps it is because, as Centennial itself states, in its Answer to the Evanston Complaint herein, the Plan "speaks for [itself] as to the[] terms and conditions and the rights and obligations created thereunder."  (See Answer of Centennial Healthcare Corp. at ¶ 24.)

The allegations of the Cross-Claim do go on to characterize various features of the Plan as it pertains to claimants in the Underlying Claims who have chosen,

or are deemed to have chosen, the "Insurance Option," as that phrase is defined under the Plan. (Cross-Claim at ¶¶ 5-11.) Further, the Cross-Claim alleges that neither Centennial, its estate, nor any "Related Third Party," as that phrase is defined in the Plan, has any personal liability for any judgments entered in any of the Underlying Claims where the claimants have elected, or are deemed to have elected, the Insurance Option. (Cross-Claim at ¶ 8.) Moreover, the Cross-Claim alleges that the Plan provides that the insurance companies providing insurance coverage for an applicable policy period are responsible for the defense and payment of any judgment with respect to a claim of any claimant who elected or is deemed to have elected the Insurance Option, subject to the provisions and limits of any applicable insurance policy and applicable non-bankruptcy law. (Cross-Claim at ¶ 10.) Finally, the Cross-Claim alleges that, where insurance proceeds are not available for the payment of the claim of any claimant who elected or is deemed to have elected the Insurance Option, such claimant has no claim against Centennial or any Related Party [sic], or any right to any distribution under the Plan. (Cross-Claim at ¶ 11.)

Based upon the foregoing allegations, the Cross-Claim asserts a single Count for declaratory judgment respecting the obligations imposed upon Centennial under the Plan with respect to claims brought by claimants who have elected or are deemed to have elected the Insurance Option under the Plan. (Cross-Claim at ¶¶

11-15.) Specifically, Centennial alleges that neither it, its estate, nor any Related Third Party has any obligation to defend any such claims, any obligation to pay the claims of any claimants making such claims, or any personal liability for judgments entered in favor of such claimants. (Cross-Claim at ¶¶ 11-14.)

Significantly, the Cross-Claim does not allege that any of the General Star policies provides coverage for any of the Underlying Claims, whether those alleged by claimants electing (or deemed to have elected) the Insurance Option, or otherwise. Moreover, the Cross-Claim does not allege that General Star disputes that the terms or provisions of the Plan provide as Centennial alleges, or that the obligations of Centennial, its estate, or any Related Third Party under the Plan are other than as Centennial alleges. In fact, the Cross-Claim fails to allege that any dispute or controversy exists between Centennial and General Star at all, whether with respect to the Plan, or with respect to any policies of insurance issued by General Star.

## II.   ARGUMENT

### A.   Standard for Motion to Dismiss

A motion to dismiss should not be granted unless it seems that the plaintiff cannot prove a set of facts in support of his claim which entitles him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957). The factual allegations of the

complaint must be accepted as true, and should be viewed in the light most favorable to the claimant. Bank v. Pitt, 928 F.2d 1108, 1109 (11th Cir. 1991). However, a court should ignore allegations amounting to opinions or legal conclusions of the pleader. Sturm v. Marriott Marquis Corp., 85 F. Supp. 2d 1356, 1364 (N.D. Ga. 2000) (citing South Fla. Water Management Dist. v. Montalvo, 84 F.3d 402, 409 n.10 (11th Cir. 1996)). If, as a matter of law, the claimant's alleged claim cannot be maintained, then the motion to dismiss should be granted. Kissimmee River Valley Sportsmans Ass'n v. City of Lakeland, 60 F. Supp. 2d 1289 (D. Fla. 1999), aff'd, 250 F.3d 1324 (11th Cir. 2001) (holding that dismissal was appropriate where no plausible construction of a statute could support a claim).

### B.   Centennial Fails to Allege a Controversy Suitable for Declaratory Judgment.

In all cases arising under the Declaratory Judgment Act,[1] the threshold question is whether a justiciable controversy exists. Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272 (1941); United States Fire Ins. Co. v. Caulkins Indiantown Citrus, 931 F.2d 744, 747 (11th Cir. 1991) (citations omitted). Congress limited federal jurisdiction under the Declaratory Judgment

---

[1] 28 U.S.C. § 2201 provides, in relevant part: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought . . . ."

Act to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete "cases or controversies."  See Tilley Lamp Co. v. Thacker, 454 F.2d 805, 807-08 (5th Cir. 1972).

Not surprisingly, whether there is such a cognizable controversy is determined on a case-by-case basis. Caulkins Indiantown Citrus, 931 F.2d at 747; see also BP Chemicals v. Union Carbide Corp., 4 F.3d 975, 977-78 (Fed. Cir. 1993) (stating that the difference between "definite and concrete" dispute and case not ripe for litigation is one of degree, determined by totality of circumstances). The controversy must be more than conjectural; the case must "touch[] the legal relations of *parties having adverse legal interests*." Caulkins Indiantown Citrus, 931 F.2d at 747 (quoting Brown & Root, Inc. v. Big Rock Corp., 383 F.2d 662, 665 (5th Cir. 1967)) (emphasis added); see also Halder v. Standard Oil Co., 642 F.2d 107, 110 (5th Cir. 1981) (stating that district courts lack jurisdiction to express legal opinions based on hypothetical or academic facts).  For a controversy to exist, "the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, *between parties having adverse legal interests*, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co., 312 U.S. at 373 (citation omitted) (emphasis added).

8

Centennial has failed to allege the existence of any sort of controversy between itself and General Star with respect to the matters regarding which it seeks a declaration, a fundamental prerequisite to issuance of a declaratory judgment. See Indemnity Ins. Co. of North America v. Kellas, 173 F.2d 120, 125 (1st Cir. 1949) (absent actual controversy between insurer and insured, possibility of a future controversy between injured party and insurer is not a sufficient "actual controversy" for purposes of Declaratory Judgment Act). Under the circumstances alleged, it is hard to see how General Star and Centennial have "adverse legal interests" with regard to what amounts to a construction of the Plan approved by the Bankruptcy Court with respect to the *debtor's* duty to defend any Insurance Option litigation brought by underlying claimants, or to pay judgments obtained by claimants in such litigation. As Centennial has noted, the Plan speaks for itself in that regard.[2]   Compare, MacMillan-Bloedel, Inc. v. Firemans Fund Ins., 558 F.

---

[2] Moreover, it would be inappropriate for Centennial to utilize this declaratory judgment action to seek an interpretation of the Plan language or to seek a disallowance of portions of General Star's claim against Centennial in the bankruptcy case. First, given that the Plan was confirmed by the Bankruptcy Court, any interpretation of the provisions of the Plan should be, in the first instance, determined by the Bankruptcy Court itself. Second, objections to claims filed in a bankruptcy case are "core proceedings" pursuant to 28 U.S.C. § 157(b)(2)(B). A district court may provide that all "core proceedings" (i.e., proceedings "arising under" or "arising in" cases under title 11 of the United States Code) as well as matters "related to" cases under title 11 of the United States Code shall be referred to the bankruptcy court in that district. 28 U.S.C. § 157(a). In the Northern District of Georgia, all such cases have been so referred to the Bankruptcy Court. Accordingly, without a withdrawal of the reference to the Bankruptcy Court, any count raised by Centennial in its Cross-Claim intended to object to General Star's claim in the bankruptcy case should be dismissed. Finally, any objection to General Star's claim in the bankruptcy case is inappropriate in this forum because it is currently being litigated in the bankruptcy case where an objection to such claim has been filed and remains pending.

Supp. 596 (D. Ala. 1983) (finding no actual controversy to support declaratory judgment action absent judgment against insured, where the purchaser of industrial equipment sought a declaratory judgment of coverage for its own tort claims against insured manufacturer, before actually obtaining judgment against the insured).

Moreover, Centennial has failed to make any allegations that would tend to support a claim for declaratory judgment as respects the policies of insurance issued by General Star to Centennial.  It has failed to allege that any of the Underlying Claims are covered under any of General Star's policies, much less provide any details concerning any such claims, or the terms of any such policies. Under the circumstances, it would require a wholesale redrafting of the Cross-Claim to insert numerous missing, and highly material, allegations in order to state a claim for declaratory judgment as against General Star.  Compare Atlanta Gas Light Company v. Aetna Cas. & Surety Co., 68 F.3d 409, 414 (11th Cir. 1995) (holding, in an insured utility's declaratory judgment claim for coverage for environmental cleanup liabilities it was likely to incur, but before any environmental agency had ordered cleanup and before any claims had been made, that there was no justiciable "actual controversy", since question of whether insurers would deny coverage was "no more than conjectural question").

The party who invokes a federal court's authority must show, at an "irreducible minimum," that at the time the complaint was filed, he has suffered some actual or threatened injury *resulting from the defendant's conduct*, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition. Caulkins Indiantown Citrus, 931 F.2d at 747 (citing Valley Forge College v. Americans United, 454 U.S. 464, 472 (1982)). Centennial has failed utterly to meet this standard, and no amount of favorable inferences based upon the facts alleged, or indulgence in conclusory allegations concerning the relief sought, can alter this fact.

## III.   CONCLUSION

For the foregoing reasons, General Star submits that Centennial's Cross-Claim should be dismissed with prejudice.

Respectfully submitted,

THE COVERAGE LAW FIRM, PLLC

/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Admitted Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com

-and-

TROUTMAN SANDERS LLP

Thomas R. Walker, Esq.
Georgia Bar No. 732755
Troutman Sanders, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
404.885.3685 telephone
404.962.6738 facsimile
thomas.walker@troutmansanders.com

*Co-Counsel for General Star Indemnity Company*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2005, I electronically filed the above with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to counsel of record at the below electronic mail addresses:

| | |
|---|---|
| David W. Cranshaw, Esq.<br>Robert C. Threlkeld, Esq.<br>Morris Manning & Martin<br>3343 Peachtree Road, N.E.<br>1600 Atlanta Financial Center<br>Atlanta, GA 30326-1044<br>404.233.7000<br>dwc@mmmlaw.com<br>rthrelkeld@mmmlaw.com | Henry E. Scrudder, Jr., Esq.<br>Teddy L. Sutherland, Esq.<br>Sommers, Scrudder & Bass LLP<br>900 Circle 75 Parkway<br>Suite 850<br>Atlanta, GA 30339-3084<br>770.612.9200<br>tsutherland@ssblaw.net |
| Robert Matthew Martin, Esq.<br>Paul Hastings Janofsky & Walker<br>600 Peachtree Street, N.E.<br>Suite 2400<br>Atlanta, GA 30308-2222<br>404.815.2205<br>mattmartin@paulhastings.com | |

THE COVERAGE LAW FIRM, PLLC

/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Admitted Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com