IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>CENTENNIAL HEALTHCARE CORP., GENERAL START INDEMNITY COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>　　　　　　　　　Defendants. | 1:05-cv-2012-WSD |

## OPINION AND ORDER

This matter is before the Court on Defendant General Star Indemnity Company's ("General Star") Motion to Dismiss Defendant Centennial Healthcare Corp.'s ("Centennial") Counterclaim and Cross-Claim for Declaratory Judgment [15] and Brief in Support thereof [16] ("Mot. to Dismiss").

I.  **FACTUAL BACKGROUND**

On August 1, 2005, Plaintiff Evanston Insurance Company ("Evanston") filed this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.[1] Evanston seeks a determination regarding the respective rights and obligations of the parties under an insurance policy which it issued to Defendant and Cross-Claimant Centennial in connection with professional and general liability claims asserted against Centennial by residents of nursing home facilities.  Defendants General Star, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), and American International Specialty Lines Insurance Company ("AISLIC") also issued insurance policies to Centennial for different coverage periods which contained different terms and conditions.

In December 2002, Centennial filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of Georgia. When the Chapter 11 petition was filed, numerous personal injury claims were pending against Centennial by residents of Centennial nursing homes.  These actions generally alleged that Centennial was liable for injury to residents suffered

---

[1] By Order entered July 14, 2005, the Bankruptcy Court granted Plaintiff Evanston permission to proceed with the filing of its declaratory judgment action in this Court.  In re Centennial Healthcare Corp., No. 02-74974 [2800].

while they were residents at and in the care of Centennial in Centennial facilities. These cases were pending in various states throughout the country (the "Underlying Claims"). The litigation of these personal injury claims against Centennial was stayed as a result of Centennial's bankruptcy filing. In June 2004, the Bankruptcy Court approved a Third Amended Joint Plan of Reorganization (the "Bankruptcy Plan" or "Plan"). The Bankruptcy Plan sets forth a procedure for addressing the Underlying claims against Centennial.

On September 30, 2005, Centennial filed a Counterclaim and Cross-Claim against all parties to the declaratory judgment action ("Cross-Claim"). The Cross-Claim seeks a declaration of the obligations of Centennial with respect to claims brought by claimants who have elected or are deemed to have elected the "Insurance Option"[2] under the Bankruptcy Plan. (Cross-Claim, at ¶¶ 5-11.) On November 28, 2005, Defendant General Star filed its Motion to Dismiss Centennial's Cross-Claim. General Star argues that Centennial fails to allege a justiciable controversy between the parties, fails to allege that it is seeking

---

[2] Under the Bankruptcy Plan, parties properly bringing claims against Centennial are required to choose to proceed with their claim under one of two options–the Insurance Option or the Distribution Option. Claimants who fail to make timely elections are deemed to have chosen the Insurance Option. (Compl., at ¶ 25.)

coverage under any General Star insurance policy for any claims falling under the Bankruptcy Plan, and fails to allege any basis for this Court to hear a claim concerning the construction and interpretation of the Bankruptcy Plan.  Centennial argues that any decision that interprets the impact of the General Star policies on General Star and Centennial requires the Court to interpret the Plan and its effect on the policies, and therefore the Court should deny General Star's Motion to Dismiss.

## II.    DISCUSSION

### A.    Standard on Motion to Dismiss

The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is well settled.  Dismissal of a complaint is appropriate only when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.  Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to

dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted). Applying these principles, the Court will address General Star's arguments in favor of dismissal.

    B.    Existence of a Justiciable Controversy

The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The threshold question in cases arising under the Act is whether a justiciable controversy exists. Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941); U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991) (citations omitted). Jurisdiction under the Declaratory Judgment Act is limited to actual "cases or controversies." Caulkins Indiantown Citrus Co., 931 F.2d at 747; see also Tilley Lamp Co. v. Thacker, 454

F.2d 805, 807-08 (5th Cir. 1972).  Whether there is such a cognizable controversy is determined on a case by case basis.  <u>Caulkins Indiantown Citrus</u>, 931 F.2d at 747; <u>see also</u> <u>BP Chemicals v. Union Carbide Corp.</u>, 4 F.3d 975, 977-78 (Fed. Cir. 1993) (stating that "the controversy must be actual, not hypothetical or of uncertain prospective occurrence" and "[t]here must be a definite and concrete dispute between adverse parties, appropriate to immediate and definitive determination of their legal rights").  The controversy must be more than conjectural, it must "be definite and concrete, touching the legal relations of parties having adverse legal interests."  <u>Caulkins Indiantown Citrus</u>, 931 F.2d at 747.  "[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  <u>Md. Cas. Co.</u>, 312 U.S. at 273.  Courts possess discretion under the Act to decide whether to declare the rights of the parties.  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286-87 (1995).  If no immediate and substantial controversy exists between the parties regarding the Bankruptcy Plan, a declaratory judgment is not warranted at this time and the Cross-Claim should be dismissed.

Centennial's Cross-Claim "seeks an adjudication of its rights and the respective rights of Evanston and the Other Insurers under the [Bankruptcy] Plan." (Cross-Claim, at ¶ 4.)  It alleges the Bankruptcy Plan requires that if a claimant selects the Insurance Option, he waives any right to receive a distribution from the bankruptcy estates.  (Id. at ¶ 5.)  Centennial also asserts that a claimant operating under the Insurance Option waives "any right to pursue any claim . . . arising prior to the Plan's confirmation date against Centennial or any 'Related Third Party,' as defined in the Plan, [3] except [to] establish[] a right to receive applicable proceeds of any insurance policy under which such Related Third Party is insured." (Id. at ¶ 6.)  Centennial further alleges that under the Plan, it has no personal liability (except to the extent of applicable insurance proceeds) in any Underlying Claim by claimants operating under the Insurance Option.  (Id. at ¶ 8.)  Centennial claims the Bankruptcy Plan requires insurance companies providing coverage for an applicable policy period to defend against and pay any judgment from claimants

---

[3] The term "Related Third Party" is defined by the Plan as "any present or former officer, director, or employee of the Debtors, any additional insured under any insurance policy issued to the Debtors, and any person who is or may be entitled to indemnification by the Debtors with respect to a particular General Liability Claim or a Professional Liability Claim." (Bankruptcy Plan, attached to Centennial's Cross-Claim for Declaratory Judgment [4] as Ex. 2, at ¶ 2.88.)

under the Insurance Option, subject to the provisions and limits of any applicable insurance policy and applicable non-bankruptcy law. (Id. at ¶ 10.) Finally, Centennial alleges that, where insurance proceeds are unavailable, the claimant has no claim against Centennial or any Related Third Party or any right to distribution under the Plan. (Id. at ¶ 11.)

In short, Centennial asks this Court to determine the rights of Centennial, Evanston, General Star, National Union, and AISLIC *under the Bankruptcy Plan*.[4] No substantial controversy can exist regarding the meaning of the Bankruptcy Plan and its effect on the parties' insurance policies until the Court actually interprets the respective policies and decides what obligations they impose. Any controversy will arise, if at all, after such determination has been made. Centennial does not allege in its Cross-Claim that a dispute has arisen among the parties as to the Plan's effect on the insurance policies at issue in this case. Centennial's liability with respect to the tort claimants under the Bankruptcy Plan is unrelated to the dispute

---

[4] Centennial does not deny that it asks the Court to interpret the Plan, but argues that General Star's Cross-Claim requires interpretation of the Bankruptcy Plan, thus Centennial is entitled to Plan interpretation. The Complaint and General Star's Cross-Claim, however, do not ask for the Plan to be interpreted. General Star simply asks the Court to interpret its rights and obligations under the General Star insurance policies. Centennial asks the Court to interpret its obligations under the Bankruptcy Plan in relation to personal injury claimants.

among the parties regarding which insurance policies apply, if at all, and during which time periods.  Whether the Plan potentially requires Centennial to pay money to personal injury claimants is not an issue "of sufficient immediacy and reality" among Centennial, General Star, or the other parties to warrant the issuance of a declaratory judgment.  The Bankruptcy Court is the appropriate forum for making that determination, and it is in a better position to interpret the Plan regarding any liability by Centennial to the personal injury claimants.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  Wilton, 515 U.S. at 286.  It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  Id. at 287 (citations omitted).  At this stage in the litigation, no immediate and substantial controversy has arisen regarding the proper interpretation of the Plan, and it would be inappropriate for the Court to interpret a Plan put in place by the Bankruptcy Court which has jurisdiction over Centennial's

bankruptcy.[5]  The Court therefore declines to declare the rights of the litigants with respect to the Plan, and Centennial's Cross-Claim should be dismissed.

### III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant General Star's Motion to Dismiss Centennial Healthcare Corp.'s Counterclaim and Cross-Claim for Declaratory Judgment [15] be **GRANTED**.

---

[5]  This is not to say that a dispute among the parties regarding the meaning of the Plan will not arise in the future.  At this time, however, there is no need for the Court to interpret the Plan.  The Court's task here is to review the respective insurance policies and decide which policies, if any, apply, and during which time periods they apply.  If, after the various insurance policies have been interpreted by this Court and applied by the Bankruptcy Court under the Plan, Centennial disagrees with any decision rendered by the Bankruptcy Court, it may exercise its available rights of review of the decision, including an appeal pursuant to 28 U.S.C. § 158.

**SO ORDERED** this 9th day of August, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE