IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

EVANSTON INSURANCE COMPANY,  :
          Plaintiff,  :
  :
v.  :     CIVIL ACTION
  :     NO. 1:05-CV-2012-WSD
CENTENNIAL HEALTHCARE CORP.,  :
GENERAL STAR INDEMNITY COMPANY,  :
NATIONAL UNION FIRE INSURANCE  :
COMPANY OF PITTSBURGH, PA and  :
AMERICAN INTERNATIONAL SPECIALTY  :
LINES INSURANCE COMPANY,  :
          Defendants.  :

**EVANSTON INSURANCE COMPANY'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**David W. Cranshaw, Esq.**
**Georgia Bar No. 193450**
**Morris, Manning & Martin, LLP**
**3343 Peachtree Road, N.E.**
**Atlanta, Georgia 30326**

**and**

**Meryl R. Lieberman, Esq.**
**(pro hac vice) (MR7317)**
**Jonathan R. Harwood**
**(pro hac vice) (JH9060)**
**Mid-Westchester Executive Park**
**Seven Skyline Drive**
**Hawthorne, New York 10532**

**Counsel for Plaintiff**

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT .................................. 1

II.  STATEMENT OF UNDISPUTED FACTS ......................... 2

III.  ARGUMENT .............................................. 18

    I.  EVANSTON DOES NOT HAVE ANY COVERAGE
        OBLIGATION FOR ANY MATTER UNLESS
        AND UNTIL CENTENNIAL HAS SATISFIED THE
        POLICY'S SELF-INSURED RETENTION ................... 18

    II.  CENTENNIAL'S FAILURE TO DEFEND CLAIMS
        RELIEVES EVANSTON OF ANY COVERAGE
        OBLIGATION THAT MIGHT OTHERWISE APPLY ......... 25

    III.  CENTENNIAL CANNOT SATISFY THE CLAIMS MADE
        AND REPORTED REQUIREMENTS OF THE POLICY ....... 30

        A.  Any Matters Not Made And Reported During The
            Policy Period Are Not Covered By The Policy ........... 30

        B.  Any Matters That Do Not Satisfy The Policy's
            Retroactive Date Are Not Entitled To Coverage .......... 34

    IV.  THE EVANSTON POLICY ONLY PROVIDES
        COVERAGE FOR ACCIDENTAL DAMAGE
        AND BODILY INJURY ................................ 37

IV.  CONCLUSION ............................................ 41

# TABLE OF AUTHORITIES

Cases

*Allstate Ins. Co. v. Grayes,*
  216 Ga. App. 419, 454 S.E.2d 616 (1995) .......................... 32, 37

*AOK Lands, Inc. v. Shand Morahan & Co.,*
  860 P.2d 924 (Utah 1993) ......................................... 35

*Board of County Com'rs, Fremont County v. Colorado*
*Counties Cas. & Property Pool,*
  888 P.2d 352 (Colo. App. 1994) ................................... 34

*Calabro v. Liberty Mutual Ins. Co.,*
  253 Ga. App. 96, 557 S.E.2d 427 (2001) ...................... 33, 37, 38

*Caldwell v. State Farm Fire Casualty Ins. Co.,*
  192 Ga. 419, 385 S.E.2d 97 (1989) ........................... 26, 27, 29

*City of Atlanta v. St. Paul Fire & Marine Ins. Co.,*
  231 Ga.App. 206, 498 S.E.2d 782 (1998) ........................... 38

*Coregis Ins. Co. v. Blancato,*
  75 F.Supp. 2d 319 (S.D.N.Y. 1999) ................................ 34

*Evans v. Medical Inter-Insurance* Exchange,
  856 A.2d 609 (D.C. 2004) ......................................... 34

*Foster v. Summit Medical Systems, Inc.,*
  610 N.W. 2d 350 (Min. App. 2000) ................................ 34

*General Star Nat'l. Ins. Co. v. World Ohio Co.,*
  973 F.Supp. 943 (C.D. Cal. 1997) ................................ 19

*Georgia Mutual Ins. Co., Inc. v. Rollins, Inc.,*
209 Ga.App. 744, 434 S.E.2d 581 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*Gulf Ins. Co. v. Dolan, Fertig and Curtis,*
433 So.2d 512 (Fla.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Hurston v. Georgia Farm Bureau Mutual Ins. Co.,*
148 Ga.App. 324, 250 S.E.2d 886 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re OES Environmental, Inc.,*
319 B.R. 266 (Bankr. M.D.Fla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Insurance Company of the State of Pennsylvania v. Acceptance Insurance Co.,*
2002 WL 3251066 (U.S.D.C. C.D.Ca. 2002) . . . . . . . . . . . . . . . . . . . . . . 21-23

*James J. Mawn Enterprises, Inc. v. Liquor Liability Joint Underwriters Ass'n,*
42 Mass. App Ct. 417, 677 N.E.2d 1162 (1997) . . . . . . . . . . . . . . . . . . . . . 34, 35

*Kleban v. National Union Fire Ins. Co. of Pittsburgh, Pa.,*
771 A.2d 39 (Pa.Super.Ct. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Marshall v. Kansas Medical Mut. Ins. Co.,*
276 Kan. 97, 73 P.3d 120 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Merrill & Seeley, Inc. v. Admiral Ins. Co.,*
225 Cal App.3d 624, 275 Cal. Rptr. 280 (1990) . . . . . . . . . . . . . . . . . . . . . 35

*Moss v. Protective Life Insurance Co.,*
203 Ga.App. 389, 417 S.E.2d 340 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Nationwide Mutual Fire Ins. Co. v. Somers,*
264 Ga. App. 421, 591 S.E.2d 430 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Pacific Employers Ins. Co. v. Domino's Pizza, Inc.,*
144 F.3d 1270 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Presidential Hotel v. Canal Ins. Co.,*
   188 Ga. App. 609, 373 S.E.2d 671 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Progressive American Ins. Co. v. Horde,*
   259 Ga. App. 769, 577 S.E.2d 835 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Resolution Trust Corp. v. Artley,*
   24 F.3d 1363 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 33

*Richmond v. Georgia Farm Bureau Mutual Ins. Co.,*
   140 Ga.App. 215, 231 S.E.2d 245 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

*Royer v. Murphy,*
   277 Ga. App. 150, 625 S.E.2d 544 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

*Ryder Integrated Logistics, Inc. v. BellSouth Tel., Inc.,*
   277 Ga App. 679, 627 S.E.2d 358 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Scottsdale Ins Co. v. Great American Assurance Co.,*
   271 Ga. App. 695, 610 S.E.2d 558 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Serrmi Products, Inc. v. Insurance Co. of Pennsylvania,*
   201 Ga.App. 414, 411 S.E.2d 305 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 33

*Southern Fire & Cas. Co. v. Jamerson,*
   223 Ga.App. 582, 479 S.E.2d 404 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Southern Guaranty Ins. Co. v. Saxon,*
   190 Ga.App. 652, 379 S.E.2d 577 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Stine, v. Continental Casualty Co.,*
   419 Mich. 89, 349 N.W.2d 127 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Yancey v. Floyd West & Co.,*
   755 S.W.2d 914 (Tex. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

iv

Statutes

28 U.S.C. §§2201-2202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OCGA §1-3-3(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## PRELIMINARY STATEMENT

Evanston Insurance Company ("Evanston" or "the Company") commenced this action for declaratory judgment pursuant to 28 U.S.C. §§2201-2202, seeking this Court's determination concerning the respective rights and obligations of the parties under an insurance policy that it issued to Centennial Healthcare Corporation ("Centennial"). Specifically, Evanston issued Commercial General Liability Policy 00GLP1005196 to Centennial, for the policy period December 31, 2000 to December 31, 2001("the policy"). A copy of the policy is annexed to the Declaration of Meryl R. Lieberman as Exhibit A. The Evanston policy only applies, subject to all other terms and conditions, to claims both made against Centennial and reported to Evanston within the policy period. Lieberman Decl., Ex. A. The policy's insuring agreement was also amended by endorsement to include a $1 million self-insured retention ("SIR) that had to be satisfied by actual payments by Centennial before any coverage under the policy was available. *Id.* This declaratory judgment action was precipitated by Centennial's claim, in the context of a bankruptcy proceeding, that approximately 100 underlying claims asserted against it were covered under the Evanston policy. As discussed in detail below, the relevant facts and applicable law demonstrate that Centennial cannot establish that Evanston has any coverage obligations under the policy with respect to the underlying claims.

## STATEMENT OF UNDISPUTED FACTS

On or about December 20, 2002, Centennial filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Northern District of Georgia.[1]  At the time of its bankruptcy filing, Centennial provided long-term care services to meet the medical needs of elderly and post-acute patients. Lieberman Decl., Ex. C at ¶19 (complaint) and Ex. D. at ¶19 (answer). In the context of the bankruptcy proceeding, Centennial disclosed that numerous professional and general liability claims had been asserted against it in conjunction with its nursing home practices. *Id.* at ¶20. Many of these claims resulted in lawsuits against Centennial, in which the plaintiffs sought recovery for injuries they allegedly suffered as the result of Centennial's conduct.  These lawsuits had been commenced in courts in several states throughout the country.  All litigation arising out of the general liability and professional liability claims asserted against Centennial were stayed as a result of Centennial's bankruptcy filing. *Id.* at ¶21. In June 2004, the Bankruptcy Court approved a Third Amended Joint Plan of Reorganization ("the

---

[1] The United States Bankruptcy Court, Northern District of Georgia, granted Evanston relief from the stay in order to commence the within declaratory judgment action.  As a condition to such relief, the Bankruptcy Court directed Centennial to provide all claimants with notice of the commencement of the within action. Centennial complied with this directive. Lieberman Decl., Ex. B.  None of the claimants, however, have elected to intervene in the instant action.

Plan"). The Plan set forth a procedure for handling the general and professional liability claims asserted against Centennial. Lieberman Decl., Ex. E. Pursuant to the Plan, parties that had properly asserted professional and general liability claims against Centennial were required to elect to proceed with their claims under one of two options, identified in the Plan as the Insurance Option and the Distribution Option. *Id.* at Exhibit 1. Claimants who failed to make timely elections were deemed to have selected the Insurance Option. *Id.* at Exhibit 1, p. 2.

After the effective date of the Plan, any claimant proceeding under the Insurance Option was entitled to pursue litigation in a court of competent jurisdiction. Lieberman Decl., E, Exhibit 1 at 4-5. The Plan states that any such litigation will be maintained solely for the right to receive applicable insurance proceeds. *Id.* Critically, for the purposes of the within motion, Centennial has admitted that it contends that, under the Plan, it does not have any obligation to pay defense costs with respect to any matters that proceed under the Insurance Option. Lieberman Decl., Ex. C at ¶27 (complaint) and Ex. D at ¶27 (answer). Consistent with this position, Centennial has advised defense counsel assigned to represent it in certain general and professional liability claims that ultimately proceeded under the Insurance Option that it will not pay for any defense fees or costs incurred in such

3

actions. Lieberman Decl., Ex. C at ¶30 (complaint) and Ex. D at ¶30 (answer), Ex.

F. The Plan also provides that Centennial is not obligated to satisfy any judgment

entered in litigations that proceed under the Insurance Option. Lieberman Decl., Ex.

C at ¶29 (complaint) and Ex. D at ¶29 (answer). Moreover, claimants electing the

Insurance Option are not entitled to any distribution under the Plan. Lieberman Decl.,

Ex. E, Exhibit 1 at 4-5.

Pursuant to the Plan, claimants who elected the Distribution Option first

proceeded through a process, set out in the Plan, under which the claimant and the

reorganized debtors, as that term is defined in the Plan, engaged in efforts to resolve

claims through settlement discussions and mediation. Lieberman Decl., Ex. E at

Exhibit 1, pp. 5-17. Any matters resolved during this process were to be paid out of

a fund created pursuant to the terms of the Plan, with any such payment made at a

percentage of the agreed to resolution, based on a formula set out in the Plan and

applied by the Bankruptcy Court. *Id.* The Plan also allows claimants who have

elected the Distribution Option to litigate their claims in a court of competent

jurisdiction if the claim is not resolved upon completion of the settlement and

mediation process. *Id.* Defense costs incurred with respect to matters proceeding

under the Distribution Option were paid out of a fund established pursuant to the

4

terms of the Plan, although only until that fund is depleted. *Id.* This applies to matters

that are resolved during the settlement and mediation process, as well as those that

proceed to litigation in a court of competent jurisdiction. *Id.* Once the fund is

depleted, either by payments of defense costs, settlements or both, the Centennial

contends that it is relieved of any further obligation to pay defense costs incurred or

judgments awarded in such actions. Lieberman Decl., Ex. C at ¶34 (complaint) and

Ex. D at ¶34 (answer). In light of the foregoing provisions of the Plan, as well as

Centennial's correspondence with defense counsel assigned to defend several of the

cases, it is clear that Centennial does not intend to make any defense or indemnity

payments with respect to any Insurance Option claims or Distribution Option claims

once the fund created pursuant to the Plan has been exhausted.

After the time by which claimants were to make their selections had expired,

Centennial provided Evanston with a list of those claimants with claims that

Centennial asserted triggered the Evanston policy ("the Election List"). This list, a

copy of which is annexed hereto as Exhibit G to the Lieberman Declaration, identifies

the option selected or deemed selected by each claimant and the insurers that

Centennial contends have a coverage obligation with respect to each claim. *Id.* At

the time this list was provided to Evanston, it identified 100 of the professional

5

liability and general liability claims asserted against Centennial as those that Centennial alleged were covered under the Evanston policy. *Id.* Many of these matters identify Evanston as one of two or more insurers with policies that are allegedly triggered by the claim. The information contained in that list, however, did not provide any information in support of Centennial's claims that any individual matter actually triggered coverage under the Evanston policy. The list, for example, did not identify whether Centennial had made any payments with respect to any individual matter, let alone payments that were sufficient to satisfy the policy's $1 million SIR. *Id.* The list was also devoid of any information concerning whether the claim was made and reported during the policy period or when the alleged injury occurred. *Id.*

Discovery in the instant litigation has revealed that Centennial is not able to satisfy its obligation that it demonstrate that the cases identified in the Election List trigger coverage under the Evanston policy. This arises from a variety of factors, including the nature of the claims themselves, developments with respect to specific claims against Centennial and procedural developments in the bankruptcy proceeding. Numerous matters, for example, have been discontinued for reasons not associated with the coverage issues raised in this matter. Pursuant to a July 6, 2005 order of the

6

Bankruptcy Court, for example, numerous claims were disallowed and expunged in their entirety. These include the following matters, which Centennial originally claimed triggered the Evanston policy: *Carroll v. Emerald*; *Cogut v. Farmington Hills*; Margaret Crawford (Grant Park facility); *Dixon v. Kents*; *Goddard v. Woodbine*; *Hamilton v. Pine River*; *Hicks v. Riverview*; *Spence v. Grant Park*; and *Alice White v. Ovid Healthcare Center*. Lieberman Decl., Ex. H. Evanston has also been advised that the following matters have been voluntarily dismissed by the plaintiffs: *Kirby (McHone) v. Emerald Village*; *Loflin v. Hunter*; *Siloman v. Riley*; and *Nunnery v. McComb*. Lieberman Decl., Ex. I. Finally, numerous matters have been settled, either through use of the mediation process set out in the Distribution Option or resolutions achieved by Centennial's other insurers. The settled cases are: Lillian M. Bettine; *Creel v. Heritage Manor*; *Doody v. Terra Vista*; *Hoke v. Westwood*; *Lundy v. Terra Vista*; *Morin v. Chenal*; *Russell v. Terra Vista*; *Simmons v. Blountstown*; *Snead v. Dolphin's View*; *Tomlinson v. Dolphin's View*; *Watts v. Avalon*; *Arceaneaux v. McComb*; *Smith v. Winona Manor*; and *White v. Emerald*. Lieberman Decl., Ex. J. These matters were all settled for less than $1,000,000 and no request was ever made that Evanston contribute to the settlements of these matters. All of the foregoing matters, having been discontinued for the reasons stated, are no

7

longer the subject of coverage under the Evanston policy and need not be considered by the Court.

The remaining 73 matters can only trigger coverage under the Evanston policy to the extent Centennial can demonstrate as to each one that it satisfies the terms and conditions of the Evanston policy and it is not the subject of an applicable policy exclusion. Discovery has made clear that Centennial cannot satisfy this obligation. As noted above, for example, the Centennial policy contains an SIR Endorsement that modifies the policy's insuring agreement in critical respects. Pursuant to that endorsement:

1.  The total limit of the Company as stated in the policy declarations shall apply excess of the retained limit (herein called the Self-Insured Retention) as stated in the endorsement, and the Named Insured agrees to assume the retained limit:

    Self Insured Retention:      $ 1,000,000_____ per occurrence
                                 $ _____ per claim

    Annual Aggregate Retention:  $ ___N/A_____

2.  The Company's obligation under this policy applies only to the amount in excess of the Self-Insured Retention. Your bankruptcy, insolvency, or inability to pay the Self-Insured Retention shall not increase our obligation under the policy.

8

> The Insured shall have the obligation to provide, at his own expense, proper defense and investigation of any claim and to accept any reasonable offer of settlement within the Self-Insured Retention. The insured's obligation to provide for his own defense is terminated upon exhaustion of the Self-Insured Retention referenced above. In the event there is any other insurance, whether or not collectible, applicable to an occurrence, claim or suit within the Self-Insured Retention, the Insured must make actual payment for the full Self-Insured Retention amount before the limits of insurance under this policy apply. **Compliance with this clause is a condition precedent for coverage under this policy. In the event of the failure of the Insured to comply with this clause, no loss, cost or expense shall be payable by the Company.**

Lieberman Decl., Ex. A (emphasis original). Pursuant to this language, the Company does not and cannot have any coverage obligation with respect to any matter that might otherwise be covered under the policy unless and until Centennial has made actual payments equaling $1 million with respect to a particular claim. As demonstrated in Section I of this Memorandum of Law, Centennial's failure or inability to satisfy this coverage provision relieves Evanston of any coverage obligation that might otherwise exist under the policy.

Coverage under the Evanston policy is also limited to claims that are made and reported during the policy period. Pursuant to the policy's Insuring Agreement:

9

\*    \*    \*

b.    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown on the Declarations or after the end of the policy period; and

(3)    A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c. below, during the policy period or any EXTENDED REPORTING PERIODS (Section V).

c.    A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1)    When notice of such claim is received and recorded by any insured or us, whichever comes first; or

(2)    When we make settlement in

10

> accordance with paragraph 1.a.
> above.

Lieberman Decl., Ex. A.  Bodily injury is defined as "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time." *Id.*

During the period in which the Evanston policy was in effect, Evanston was provided with Loss Runs that were prepared by or on behalf of Centennial. Lieberman Decl., Ex. K.  These Loss Runs were provided as the method of notice to the Company, pursuant to paragraph 5.a of the SIR endorsement.  Lieberman Decl., Ex. A.   They contained information about "events," "claims," "suits" and "administrative files" that Centennial contended it had become aware of during the Evanston policy period.  Lieberman Decl., Ex. K.  The loss runs were created by or on behalf of Centennial and provided to Evanston, in compliance with Centennial's obligations under the policy in an effort to put Evanston on notice of matters that Centennial contended were covered under the Evanston policy.  Centennial has acknowledged its obligation in this regard, and that the purpose of the loss runs was to put Evanston on notice of such matters.  Lieberman Decl., Ex. C at ¶¶22-23 (complaint) and Ex. D at ¶¶22-23 (answer).  Numerous matters contained on the

11

Election List were not contained within these loss runs.[2]  Accordingly, these claims were not reported to Evanston in accordance with the mandate of the insuring agreement.  In addition, many matters on the Election List were identified as "post-petition" claims.[3]  This refers to Centennial's bankruptcy petition, which was filed on December 20, 2002. As this was almost one year after the Evanston policy expired, these matters also could not have been made and reported during the policy period. For the reasons discussed in Section II below, these matters are accordingly not covered under the Evanston policy.

---

[2]  These matters are as follows: *Bettine v. Parkview Manor Nursing Home; Buckel v. Centennial Healthcare Management Corp.; Mary F. Carroll; Bessie Clayborn; Cogut v. Centennial Healthcare Management, et al.; Ruby Creel; Department of Health Investigation; Rosemarie Goddard; Barbara Griffin v. Blounstown Nursing Home Investors, LLC; Haczynski v. Life Care Centers of America, Inc. of Tennessee, et al.; Harvard v. Glenburney Nursing Home, et al.; Bernice Hidle; Jennings v. Starkville; Gretta Johnson; James Johnson v. Grant Park; Dorothea Johnson v. Ashton Court; Kovac v. Woodbine; Dorothy Lane; Maxine Morin; Oliver v. H.M. Ferriday; Phelps v. Beverly Healthcare, et al.; Regalado v. Beverly Health and Rehabilitation Services, Inc., et al. ; Juanita Rhine; Katherine Rozmiarek; Rutledge v. Oaks Sweeten Creek; Earl John Scott; Siloman v. Riley; Spence v. Grant Park; Marilyn Thompson; Irene Thompson v. Piggot; Judith Tucker; Ware v. Avalon; Margaret Welch; Vivian Watts; Joseph and Alice White v. Ovid Healthcare Center; Nancy Brown Williams v. Perry Health Facility; George Williams*

[3]  These matters were identified as follows: *Amos v. Emerald Ridge; Barden v. HM Ferriday; Bendell v. Ashton Woods; Bielec v. Whitehall; Carter v. Emerald Shores; Cooks v. THS Kannapolis; Daniels v. Terra Vista; Eskridge v. Winona Manor; Guthrie v. Wilora Lake; Halford v. Ferriday; Haralson v. HM Ferriday; Halman v. Winona Manor; Jennings v. Starkville Manor; Johnson v. Ashton Court; Johnson v. Grant Park; Kerby v. Paloma Blanca; Lam v. Paloma Blanca; Littlejohn v. Avelon; Metcalf v. Chenal; Mitchell v. Ashton Court; Nunnery v. McComb; Petty v. Starkville Manor; Regalado v. Habana; Thompson v. Whitehall; Webb v. Donegan; and Williams v. Wilora Lake.*

12

As quoted above, the Insuring Agreement in the Evanston policy further limits coverage to matters that occurred after the policy's Retroactive Date. Lieberman Decl., Ex. A. The Retroactive Date, as stated in the policy declarations, is December 31, 2000. *Id.* Documents provided during discovery in this action reveal that several of the matters listed on the Election List involve injuries that allegedly occurred prior to the retroactive date. Lieberman Decl., Ex. L. These matters are also outside the coverage provided by the policy.[4]

As noted above, the policy's Insuring Agreement limits coverage, *inter alia,* to bodily injury or property damage caused by an "occurrence" that takes place during the policy period and where a claim for such damage was made and reported during the policy period. An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Lieberman Decl., Ex. A. This language, which is part of the insuring agreement, clearly limits coverage to purely accidental events. In addition, the policy excludes coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured. . ." Lieberman Decl., Ex. A. In addition, the policy contains a Resident

---

[4] *Anderson v. Whitehall Health Care Center of Ann Arbor*; *Buckel v. Hurstborne*; *Lillie Conyers*; *Hacyzynski v. Emerald*; *Richardson v. Chenal*; and *Johnson v. Grant Park.*

13

Healthcare Facility endorsement containing the following language:

> This insurance does not apply to:
>
> (1)   Liability arising out of the willful or intentional violation of "Rights of Residents"
>
> (2)   Fines or penalties that are assessed by a court of regulatory authority
>
> (3)   Damages that are covered by other insurance in this policy or any other insurance policy whether collectible or not

Lieberman Decl., Ex. A. The endorsement defines "Rights of Residents" as:

> (1)   Any right granted to a nursing home resident under any state or federal law regulating your business as a resident health care facility
>
> (2)   The rights of residents as included in the United States Department of Health and Welfare Regulations governing participation of Intermediate Care Facilities and Skilled Nursing Facilities, regardless of whether your facility is subject to those regulations.

Lieberman Decl., Ex. A.

The claims against Centennial contain allegations that implicate the foregoing

covering provisions and exclusions. In *Miller v. Dumas Nursing Center*, for example,

it has been alleged that Centennial failed to exercise its obligations to its nursing

14

center residents "with a conscious disregard for [their] rights and safety." Lieberman Decl., Ex. M at 6.  Such conduct by Centennial allegedly lead to injuries that "were foreseeable." *Id.* at 7.  It has also been alleged that Centennial "consciously failed to supervise nurses and aides and failed to hire sufficient numbers of nurses and aides," and that such "grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct" lead directly to injuries to plaintiffs. *Id.* at 9-11.  Similarly, it has been alleged that Centennial violated various state regulations and that its "grossly negligent, willful, wanton, reckless, malicious and/or intentional" acts in this regard lead directly to the injuries alleged. *Id.* 11.  Such allegations clearly fall outside the scope of the policy's coverage.

Similar allegations are contained in several other claims against Centennial. In an action commenced by the Estate of Roosevelt Arceneaux, for example, it has been alleged that Centennial "consciously and deliberately" committed the conduct at issue. Lieberman Decl., Ex. N at 7-8.  It is also alleged that Centennial's actions were willful, wanton and malicious and that it intentionally engaged in common law fraud. *Id.* at 18-25. Allegations of intentional, willful and malicious conduct are also contained in a complaint filed on behalf of Lavern Clement. Lieberman Decl., Ex. O at 7-11.  That matter also includes a cause of action for the alleged violation of

15

"Resident's Rights" guaranteed by state and federal law. *Id.* at 8-10. Numerous other matters also contain allegations of intentional, willful and malicious conduct. These include the following: *Blackmon v. Grant Park Nursing Home Limited Partnership*, Lieberman Decl., Ex. P (alleged violations of resident's statutory rights); *Richardson v. Centennial Healthcare Corp.*, Lieberman Decl., Ex. Q at 4-9 (allegations of conscious disregard, intentional disregard for their actions towards residents and violations of statutes protecting resident's rights); *Smith v. Centennial Healthcare Corp.*, Lieberman Decl., Ex. R at 21-29 (allegations of malice, willful conduct and fraud); *Harris v. Centennial Healthcare Corp.*, Lieberman Decl, Ex. S at 7-8, 15-18 (allegations of intentional, wanton and willful conduct and violations of statutes protecting resident's rights); *Crisco v. Centennial Healthcare Management Corp.*, Lieberman Decl., Ex. T at 4 (allegations of willful and wanton conduct); *Wilbert v. Centennial Healthcare Corp.*, Lieberman Decl., Ex. U at 7, 14-19 (allegations of violations of statutes protecting resident's rights and willful and wanton conduct); and *Martin v. Centennial Healthcare Management Corp.*, Lieberman Decl., Ex. V at 11-12 (allegations of intentional and willful conduct). These and other claims also include allegations of mental anguish and similar injuries. As discussed in section IV of this memorandum of law, the policy's occurrence definition, bodily injury

16

definition and the above-quoted exclusion preclude coverage for these matters and any others that contain similar allegations of conduct and injuries that cannot reasonably be called accidental or constitute bodily injury.

As discussed in detail below, for all of the foregoing reasons, Evanston seeks a declaration that it is not obligated to provide coverage under the policy for any of the underlying matters that Centennial claims implicate coverage under the policy.

## ARGUMENT

### I.

### EVANSTON DOES NOT HAVE ANY COVERAGE OBLIGATION FOR ANY MATTER UNLESS AND UNTIL CENTENNIAL HAS SATISFIED THE POLICY'S SELF-INSURED RETENTION

Pursuant to the Self-Insured Retention endorsement to the Evanston policy quoted *supra*, Evanston does not have any obligation to defend or indemnify Centennial with respect to any claims unless Centennial has made actual defense and/or indemnity payments on a particular claim in an amount equal to $1,000,000. Lieberman Decl., Ex.A. The endorsement also states that Centennial is obligated, at its own expense, to defend and investigate any claim and to accept any reasonable offer of settlement within the $1,000,000 SIR. *Id.* Moreover, the SIR cannot be satisfied by payments received through any other insurance, whether or not collectible or available to Centennial. *Id.* Rather, Centennial must make actual payment for the full SIR amount before the limits of insurance under the Evanston policy apply. *Id.* Moreover, pursuant to the endorsement, Evanston's obligations under the policy, including the SIR, cannot be increased by Centennial's bankruptcy insolvency or inability to pay the SIR. *Id.* Perhaps most importantly, for present purposes, the SIR endorsement is part of the policy's insuring agreement. As such, Centennial must

18

demonstrate that it satisfied this requirement before any coverage can apply. *Progressive American Ins. Co. v. Horde,* 259 Ga. App. 769, 770, 577 S.E.2d 835, 837 (2003). Any failure by Centennial to comply with this clause specifically relieves Evanston of any obligation to pay any loss, cost or expense otherwise covered by the policy. *Id.* Critically, the endorsement also states that compliance with it is a condition precedent to coverage under the policy. Lieberman Decl., Ex. A. Failure to comply with this provision, pursuant to the clear, unambiguous policy wording, thus relieves Evanston of any obligation to pay loss, costs or expenses associated with any matter. *Id.*

An SIR is considered to be the equivalent of primary insurance. *Pacific Employers Ins. Co. v. Domino's Pizza, Inc.*, 144 F.3d 1270 (9th Cir. 1998). Policies that contain such provisions are thus deemed to be excess policies. *Id.* As a result, insurers that have issued policies containing such provisions have no duty to provide a defense or indemnification until the self-insured retention has been satisfied. *See Georgia Mutual Ins. Co., Inc. v. Rollins, Inc.*, 209 Ga.App. 744, 746, 434 S.E.2d 581, 584 (1993) (since the insurer's obligation only applies to amounts excess of an SIR, the defendant is not "insured" under a policy for the amount of the self-insured retention); *see also General Star Nat'l. Ins. Co. v. World Ohio Co.,* 973 F.Supp. 943,

19

948-949 (C.D. Cal. 1997). Consistent with these principles, Evanston has no obligation under its policy unless and until Centennial has satisfied the express terms of the Evanston policy's SIR Endorsement.

To date, Evanston has not been advised that Centennial has made actual payment in the amount of $1,000,000 with respect to any claim allegedly covered by the policy. In fact, in its answer to the complaint in this matter Centennial has admitted that it has not made actual payments totaling $1,000,000 in any of the Insurance or Distribution matters. Lieberman Decl., Ex. C at ¶37 (complaint) and Ex. D at ¶37 (answer). In addition, all the relevant factors confirm that Centennial will never be able to satisfy this condition to coverage. Pursuant to the Joint Plan, Centennial is relieved of any obligation to make payments of any type for matters that proceeded under the Insurance Option.[5] Lieberman Decl., Ex. E at Exhibit 1, pp. 4-5. Additionally, payments on any matters that proceed under the Distribution Option come from a fund created by the debtors. *Id.* at 5-17. There is no indication that the money comprising the fund was contributed by Centennial. Once that fund is exhausted, Centennial is not obligated to make any payments of any type for matters

---

[5] The matters proceeding under the Insurance and Distribution Options are identified on Centennial's Election List, which is annexed to the Lieberman Declaration as exhibit E.

that proceed under the Distribution Option. *Id.* Centennial, therefore, will not be

making actual payments of $1,000,000 with respect to any of these matters, rendering

it unable to satisfy the SIR in any such matter. Pursuant to the clear wording of the

policy, and its conditions precedent, Centennial's failure or inability in this regard

relieves Evanston of any coverage obligation with respect to claims allegedly covered

by its policy. *See Insurance Company of the State of Pennsylvania v. Acceptance*

*Insurance Co.*, 2002 WL 3251066 (U.S.D.C. C.D.Ca. 2002).

The *Insurance Company of the State of Pennsylvania* ("*ICSOP*") decision

arises out of facts strikingly similar to the instant matter and, as a result, is highly

instructive. In *ICSOP*, an insured had purchased a commercial general liability policy

that was subject to a $250,000 SIR. As with Centennial, the insured in *ICSOP* was

proceeding in bankruptcy at all relevant times. While the insurer received notice of

certain claims, it denied coverage because the SIR had not been satisfied. The policy

at issue contained an SIR endorsement that was identical in all material respects to

the one contained in the Evanston policy, including the provision that the insured's

bankruptcy, insolvency or inability to pay the SIR would not increase the insurer's

obligation under the policy. *ICSOP*, 2002 WL 32515066 at 2. The insurer rejected

requests for contributions towards payments on any claims, on the grounds that the

21

SIR had not been satisfied.

In analyzing the propriety of the insurer's position, the *ICSOP* court noted that SIRs are the equivalent of primary liability insurance, provided by the insured, rendering the policy itself excess coverage. *ICSOP*, 2002 WL 32515066 at 3. As noted above, the Georgia courts have recognized this principle as well. *Georgia Mutual Ins. Co., Inc.,* 209 Ga. App. at 746, 434 S.E.2d at 584. This is true regardless of any designation of the policy as a primary policy. *Id.* As excess coverage, absent satisfaction of the SIR the insurer does not have any duty to indemnify the insured or participate in its defense. *ICSOP*, 2002 WL 32515066 at 3. In reaching this decision, the *ICSOP* court noted that the excess nature of the coverage was confirmed by the fact that the policy only stated that the insurer had the right, but not the obligation, to associate in the defense of a case prior to exhaustion of the SIR. *Id.* at 4. The Evanston policy provides it with the same option, without imposing any defense obligation on the Company. Lieberman Decl., Ex. A.

In addressing the SIR issue, the *ICSOP* court also analyzed whether the insured's bankruptcy had any effect on the insurer's coverage obligations. Plaintiff in *ICSOP* claimed that the insured's bankruptcy rendered it unable to satisfy the SIR. This, it was argued, precluded the insurer from relying on the SIR to "avoid its

22

obligations." The court flatly rejected this argument, noting that the SIR endorsement specifically stated that the insurer did not have any coverage obligation until the insured satisfied the SIR requirement. *ICSOP*, 2002 WL 32515066 at 8. As the insured had not done so, the insurer was not avoiding any obligation, as none had yet accrued. *Id.* The same is true in the instant matter, as Evanston does not have any obligation to provide coverage, if at all, until the SIR is satisfied, an event that has yet to occur. The propriety of this result is only reinforced by the provision in Evanston's SIR endorsement which specifically states that Centennial's "bankruptcy, insolvency, or inability to pay the Self-Insured Retention shall not increase our obligation under the policy." Lieberman Decl., Ex. A.

Discovery has not revealed one underlying matter in which the SIR has been satisfied with respect to any of the claims that allegedly implicate coverage under the Evanston policy and, as noted above, Centennial has admitted its failure to satisfy this requirement. Absent proof that this has occurred, Evanston cannot have any obligation to provide defense or indemnification with respect to any matters allegedly otherwise covered by its policy. The existence of payments on behalf of Centennial by its other insurers, through the bankruptcy process or from any other source, if that occurred at all, does not alter this analysis. The plain, unambiguous language of the

23

SIR endorsement states that the insured must make actual payment of the full self-insured retention even where there is other insurance available with respect to a particular claim. Lieberman Decl., Ex. A. It is thus clear from the unambiguous wording of the SIR endorsement that Evanston does not have any coverage obligation unless and until Centennial itself has made an actual payment of $1 million on a particular claim. The courts regularly enforce the clear, unambiguous language of insurance policies. *Ryder Integrated Logistics, Inc. v. BellSouth Tel., Inc.*, 277 Ga App. 679, 684, 627 S.E.2d 358, 363 (2006); *Scottsdale Ins Co. v. Great American Assurance Co.*, 271 Ga. App. 695, 696, 610 S.E.2d 558, 560 (2005). Evanston thus respectfully requests a declaration that it is not obligated to provide a defense or indemnification with respect to any matters allegedly covered by its policy unless and until Centennial pays one million dollars as to each such claim pursuant to its obligations under the SIR. If that condition precedent does not occur, Evanston is relieved of any and all obligations under the policy.

It is beyond cavil that, pursuant to the unambiguous wording of its SIR endorsement, Evanston cannot be liable for any defense or indemnity amounts that are less than $1,000,000. At the least, Centennial's failure to satisfy the SIR must limit Evanston's coverage obligations to indemnity or defense costs that exceed

24

$1,000,000. *See In re OES Environmental, Inc.*, 319 B.R. 266, 269 (Bankr. M.D.Fla. 2004); *Kleban v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 771 A.2d 39 (Pa.Super.Ct. 2001). Any other determination would completely abrogate the SIR endorsement, rendering the provision meaningless and mere suplusage. Such a result is always disfavored when interpreting and applying insurance policies. *Southern Fire & Cas. Co. v. Jamerson*, 223 Ga.App. 582, 583, 479 S.E.2d 404, 406 (1996).

## II.

### CENTENNIAL'S FAILURE TO DEFEND CLAIMS RELIEVES EVANSTON OF ANY COVERAGE OBLIGATION THAT MIGHT OTHERWISE APPLY

Pursuant to the SIR Endorsement, Centennial also "has the obligation to provide, at [its] own expense, proper defense and investigation of any claim . . . The Insured's obligation to provide for [its] own defense is terminated upon the exhaustion of the Self-Insured Retention referenced above." Lieberman Decl., Ex. A. As detailed above, the SIR is $1,000,000 per occurrence. Centennial, therefore, is required to defend all claims against it until such time as the $1,000,000 SIR is satisfied. Moreover, in addition to being part of the Insuring Agreement, compliance with this provision is "**a condition precedent for coverage under this policy. In the event of the failure of the Insured to comply with this clause, no loss, cost or**

25

**expense shall be payable by the Company.**" Lieberman Decl., Ex. A (emphasis original). Critically, with respect to this case, the SIR Endorsement also affirmatively states that Centennial's bankruptcy, insolvency, or inability to pay the Self-Insured Retention shall not increase [Evanston's] obligation under the policy." *Id.* Any claim that Centennial's failure to satisfy this essential requirement for coverage because of its bankruptcy, therefore, is irrelevant.

As noted several times, as the SIR is part of the Insuring Agreement, Centennial is obligated to demonstrate that it has satisfied this obligation before any coverage can attach. Moreover, to the extent this language also constitutes a condition precedent to coverage, the Georgia courts have regularly given effect to express conditions precedent in insurance policies. In so doing, the courts have found that the failure to comply with express conditions excuses an insurer from any coverage obligation. In *Caldwell v. State Farm Fire Casualty Ins. Co.*, 192 Ga. 419, 385 S.E.2d 97 (1989), for example, the plaintiff's son had provided alcohol to some friends who had come over to visit. Before the friends left the house, the son observed that the driver appeared to be drunk. After leaving, the visitors were involved in an accident in which one person was injured. The son was aware of the accident the next day and his parents, the named insureds, learned of it four months

26

later.  The insurer, however, was not notified for another nine to ten months and denied coverage based on the insured's failure to comply with the policy's notice condition.   In granting summary judgment for the insurer and enforcing this condition, the court held that the notice requirement was a valid condition precedent to coverage.  *Caldwell*, 192 Ga. at 420, 385 S.E.2d at 99; *see also Royer v. Murphy,* 277 Ga. App. 150, 151, 625 S.E.2d 544 (2006); *Richmond v. Georgia Farm Bureau Mutual Ins. Co.*, 140 Ga.App. 215, 222, 231 S.E.2d 245, 250 (1976).  Failure to comply with it, the court held, relieved the insurer of any coverage obligation. *Caldwell*, 192 Ga. at 420, 385 S.E.2d at 99.

A similar conclusion was reached in *Hurston v. Georgia Farm Bureau Mutual Ins. Co.*, 148 Ga.App. 324, 250 S.E.2d 886 (1978).  In *Hurston*, the insured was accused of failing to abide by the policy's cooperation clause.  As with the notice provision at issue in *Caldwell*, the court noted that the cooperation clause is a material condition to coverage, the breach of which relieves the insurer of any coverage obligation. *Hurston*, 148 Ga.App. at 325, 250 S.E.2d at 888.  In fact, the court held that the breach of such a condition to coverage, alone, warrants a finding of no coverage. *Id.*

The same result is particularly appropriate here, with respect to matters not

27

defended by Centennial. This is because the obligation to defend, which rests with Centennial, carries with it duties in addition to merely paying for the defense. It is undisputed that Centennial has defaulted on this significant obligation. First, as noted above, in answering the complaint Centennial admitted that it does not believe it has any obligation to pay defense costs with respect to Insurance Option claims, and has advised defense counsel of same. Additionally, pursuant to the Joint Plan, there is a mechanism for handling bodily injury claims asserted against Centennial. Certain aspects of this procedure, and Centennial's obligations under the Plan, are directly contrary to the requirements of the Evanston policy. Pursuant to the Plan, claimants could elect one of two courses in pursuing their claims, the Insurance Option or the Distribution Option. The Plan states, however, that Centennial will not defend any claims that proceed under the Insurance Option. Lieberman Decl., Ex. E, Exhibit 1 at 4-5. The Plan also purports to relieve Centennial of defending any Distribution Option claims once the applicable fund has been depleted. *Id.* at 5-17. While the Plan states that the appropriate insurers will remain responsible for providing such a defense, it also notes that any such defense is "subject to the provisions of any applicable policy and applicable non-bankruptcy law." *Id.* at 5. The Evanston policy, of course, requires that Centennial provide such a defense until Centennial satisfies

28

the SIR. The Plan makes it clear that Evanston may enforce the terms of its policy under non-bankruptcy law.

The Georgia courts have regularly enforced such clear and unambiguous requirements. *See Caldwell*, 192 Ga. at 420, 385 S.E.2d at 99; *see also Royer v. Murphy*, 277 Ga. App. 150, 151, 625 S.E.2d 544 (2006); *Richmond v. Georgia Farm Bureau Mutual Ins. Co.*, 140 Ga.App. 215, 222, 231 S.E.2d 245, 250 (1976).

Centennial's admission that it will not defend claims that proceed under the Insurance Option has been equally clear and unambiguous. It admitted as much in its answer to the complaint and its intent to proceed in this fashion is set out specifically in the Joint Plan and has been reinforced in correspondence from Centennial's counsel to defense counsel. Lieberman Decl., Exs. C and D. Additionally, in setting out Centennial's intent to ignore its obligation to defend actions that proceed under the Insurance Option, and attempting to defer this obligation to insurers, the Joint Plan maintains insurance neutrality by specifically allowing insurers such as Evanston to enforce their policy terms under non-bankruptcy law. Lieberman Decl., Ex E at Exhibit I, *passim.* The provisions of the Evanston policy clearly provide that such failure results in a forfeiture of coverage, both under the Insuring Agreement and as a condition to coverage. Centennial's clear

29

failure to satisfy the obligations set out in the SIR Endorsement thus entitles Evanston

to a finding that it does not have any coverage obligation whatsoever.

### III.

## CENTENNIAL CANNOT SATISFY THE CLAIMS MADE
## AND REPORTED REQUIREMENTS OF THE POLICY

### A.    Any Matters Not Made And Reported During The
### Policy Period Are Not Covered By The Policy

The Evanston policy was issued on a claims made and reported basis.  This

critical limitation on the Evanston coverage is made abundantly clear at the very

outset of the policy.  The first page of the coverage form advises the insured, in bold,

all capital letters, that the policy provides **"CLAIMS-MADE COVERAGE."**

Lieberman Decl., Ex. A.  (Emphasis original.)  As a result, and with the same

emphasis, the insured is advised to **"READ THE ENTIRE FORM CAREFULLY."**

*Id.*  The limitations imposed by the claims made and reported nature of the policy are

set out in great detail on the first page of the coverage form, including the statement

that coverage is limited to claims made against the insured during the policy period.

*Id.*  In addition, the claim must involve bodily injury that occurred after the policy's

December 31, 2000 retroactive date and before the end of the policy period.  *Id.*

The Georgia courts have regularly enforced the requirements of claims made

30

policies like that issued by Evanston. In doing so, the courts have consistently stated that such policies only apply to claims that are both made and reported during the applicable reporting period. *See Resolution Trust Corp. v. Artley*, 24 F.3d 1363 (11th Cir. 1994); *Serrmi Products, Inc. v. Insurance Co. of Pennsylvania*, 201 Ga.App. 414, 411 S.E.2d 305 (1991). The policy at issue in *Serrmi*, like the Evanston policy, was stated to be issued on a claims made basis. In defining the scope of coverage provided by such a policy, the court held that coverage under a claims made policy is "'effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term. The essence, then, of a claims made policy is notice to the carrier within the policy period." *Serrmi*, 201 Ga.App. at 414, 411 S.E.2d at 306, quoting *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512, 514 (Fla.1983). The Eleventh Circuit confirmed this in *Resolution Trust*, reiterating that coverage under a claims made policy only exists where the negligent act or omission is discovered and reported to the insurer within the policy period. *Resolution Trust*, 24 F.3d at 1367.

Pursuant to the clear and unambiguous wording of the Evanston policy, then, the only claims against Centennial that could possibly be covered under the Evanston policy are those that were made and reported during the December 31, 2000 to

31

December 31, 2001 policy period. Many of the claims contained on the Election List clearly fail to satisfy this requirement. Twenty-seven of those matters, for example, are identified as "post-petition" claims, as they were made after Centennial filed its bankruptcy petition on December 20, 2002. See footnote 3, supra. This was approximately one year after the Evanston policy expired. There is no set of circumstances, therefore, pursuant to which it can be said that these claims were made and reported during the policy period. Centennial, in fact, has acknowledged the propriety of this result. In opposition to Evanston's request for relief from the bankruptcy stay, Centennial unequivocally admitted that post petition claims are not covered under the Evanston policy. Lieberman Decl., Ex. W at 2. In light of the foregoing factors, Evanston is entitled to a declaration that its policy does not provide coverage for any claims made after the filing of Centennial's bankruptcy petition including, but not limited to, those identified as post petition claims on the Election List.

The Election List also contains a list of 73 pre-petition matters. As the claims made and reported requirement of the policy is part of the policy's insuring provisions, before the possibility of coverage can even exist, Centennial must establish that these matters were made and reported during the policy period. *Allstate*

32

*Ins. Co. v. Grayes,* 216 Ga. App. 419, 420, 454 S.E.2d 616 (1995); *Calabro v. Liberty Mutual Ins. Co.,* 253 Ga. App. 96, 97, 557 S.E.2d 427, 929 (2001). Centennial, however, is unable to meet this burden with respect to at least 41 of the cases identified on the Election List. The SIR Endorsement, which modified the policy's insuring agreement, established a mechanism by which Centennial was to place Evanston on notice of matters allegedly covered by the policy. Pursuant to that mechanism, Centennial or its third-party administrator ("TPA") was obligated to provide Evanston with loss runs, on a quarterly basis, listing all of the claims allegedly affecting the policy. Lieberman Decl., Ex. A. In May 2002, Centennial's TPA provided Evanston with what were identified as the final loss runs with respect to those matters that allegedly triggered the Evanston policy. *Id.,* Ex. K. Evanston was provided with separate loss runs for closed and open claims. *Id.* As these loss runs constituted the method by which Evanston was to be put on notice of all occurrences, suits or claims, any matters not contained therein could not have been made and reported during the policy period. Pursuant to the policy language, then, any such matters not so reported are not covered under the Evanston policy. *See Resolution Trust Corp.,* 24 F.3d at 1367; *Serrmi Products, Inc.,* 201 Ga. App. at 414, 411S.E.2d at 306.

33

Centennial's Election List included at least 37 pre-petition matters that were not reported in the loss runs provided to Evanston. These matters, which are listed in footnote 2, therefore, could not have been made and reported during the policy period. As a result, Evanston is entitled to a declaration that it does not have any coverage obligation with respect to those matters, and any others, not contained within the final loss run or any other notice to Evanston, as such matters were not made and reported within the policy period.

## B.   Any Matters That Do Not Satisfy The Policy's Retroactive Date Are Not Entitled To Coverage

Coverage under the Evanston policy is also limited to bodily injury that took place after the policy's retroactive date of December 31, 2000 and before the end of the policy. Retroactive dates in claims made policies are given effect. *Coregis Ins. Co. v. Blancato,* 79 F.Supp. 2d 319, 321 (S.D.N.Y. 1999); *Evans v. Medical Inter-Insurance* Exchange, 856 A.2d 609 (D.C. 2004): *Marshall v. Kansas Medical Mut. Ins. Co.,* 276 Kan. 97, 73 P.3d 120 (2003); *Foster v. Summit Medical Systems, Inc.,* 610 N.W. 2d 350 (Min. App. 2000); *James J. Mawn Enterprises, Inc. v. Liquor Liability Joint Underwriters Ass'n,* 42 Mass. App Ct. 417, 677 N.E.2d 1162 (1997); *Board of County Com'rs, Fremont County v. Colorado Counties Cas. & Property*

34

*Pool*, 888 P.2d 352 (Colo. App. 1994); *Merrill & Seeley, Inc. v. Admiral Ins. Co.*, 225 Cal App.3d 624, 275 Cal. Rptr. 280 (1990); *Yancey v. Floyd West & Co.*, 755 S.W.2d 914 (Tex. App. 1988). As these courts have recognized, claims made policies are intended to provide coverage for a well defined and fairly restricted time period. *See James Mawn Enterprises, Inc.*, 42 Mass. App. Ct. At 420, 677 N.E.2d at 1164; *Stine, v. Continental Casualty Co.*, 419 Mich. 89, 113-114, 349 N.W.2d 127, 137-138 (1984). Providing coverage in this manner allows insurers to more accurately assess their risk, thereby allowing them to more appropriately set premiums. *AOK Lands, Inc. v. Shand Morahan & Co.*, 860 P.2d 924, 927 (Utah 1993); *Yancey*, 755 S.W.2d at 923-924. This, in turn, generally results in lower premiums for insureds. *AOK Lands, Inc.*, 860 P.2d at 927, *Yancey*, 755 S.W.2d at 923-927. Consistent with these principles, the Insuring Agreement in the Evanston policy precludes coverage for matters involving bodily injury that occurred before the policy's December 31, 2000 retroactive date. Lieberman Decl., Ex. A.

Based on information provided by Centennial in discovery, however, several of the matters identified as allegedly triggering coverage under the Evanston policy involve alleged injuries that predate the policy's retroactive date. For example:

Plaintiff in the action entitled *Anderson v. Whitehall Health*

35

> *Care Center of Ann Arbor*, suffered the injury at issue on May 19, 2000, over seven months prior to the retroactive date;
>
> Plaintiff in *Buckel v. Hurstbourne*, alleges that she was injured on September 24, 2000;
>
> Claimant Lillie Conyers identified her dates of residency at the Centennial facility as June 13, 2000 to December 5, 2000. Any bodily injury suffered by her must have occurred prior to the policy's December 31, 2000 retroactive date;
>
> Plaintiff in *Haczynski v. Emerald, et al.* was allegedly a resident at a Centennial facility from April 5, 2000 to October 3, 2000, also before the policy's retroactive date; and
>
> In James *Johnson v. Grant Park*, plaintiff's claim is based on an accident that occurred in October 2000.

Lieberman Decl., Ex. L. All of these matters involve allegations of bodily injury that occurred prior to the policy's retroactive date. Evanston thus respectfully asserts that it is entitled to a declaration that it has no coverage obligation with respect to these matters, or any others, that involve bodily injury that took place prior to the policy's December 31, 2000 retroactive date. Again, as the requirement that the injury occur after the policy's retroactive date is part of the insuring agreement, Centennial is obligated to demonstrate that the matters for which it seeks coverage meet this

36

requirement. *Allstate Ins. Co.*, 216 Ga.App. at 420, 454 S.E.2d at 619; *Calabro*, 253 Ga.App. at 97, 557 S.E.2d at 429. Any failure to do this precludes coverage under the policy. Evanston thus respectfully requests a declaration that all matters that fail to meet this requirement are not entitled to coverage under the policy.

## IV.

## THE EVANSTON POLICY ONLY PROVIDES COVERAGE FOR ACCIDENTAL DAMAGE AND BODILY INJURY

The policy's insuring agreement also requires, *inter alia*, that any bodily injury or property damage be caused by an "occurrence." Lieberman Decl., Ex. A. An occurrence is defined as an "accident." *Id.* Once again, as these requirements are part of the policy's insuring agreement it is beyond dispute that coverage does not exist unless Centennial demonstrates that a particular matter involves accidental conduct. *See Calabro v. Liberty Mutual Ins. Co.*, 253 Ga.App. 96, 557 S.E.2d 427 (2001); *Allstate Ins. Co. v. Grayes*, 216 Ga.App. 419, 454 S.E.2d 616 (1995). The policy also excludes coverage for bodily injury that is expected or intended from the standpoint of the insured and, pursuant to the Resident Health Facility endorsement, liability arising out of the willful or intentional violation the "Rights or Residents." Lieberman Decl., Ex. A. The "Rights of Residents" are defined as those that are

37

granted under any state or federal law regulating resident health care facilities, as well as those included in the United States Department of Health and Welfare Regulations governing such facilities. *Id.* Application of these provisions of the policy clearly preclude coverage for claims involving alleged intentional conduct by Centennial.

In interpreting language similar to that in the Evanston policy, the courts have defined an accident as an unexpected happening or an event that takes place without one's foresight or expectation or design. *Calabro*, 253 Ga.App. at 97, 557 S.E.2d at 429; *Southern Guaranty Ins. Co. v. Saxon*, 190 Ga.App. 652, 653, 379 S.E.2d 577 (1989); *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga.App. 206,208, 498 S.E.2d 782, 784 (1998); *see also* OCGA §1-3-3(2). Moreover, where coverage is limited to accidental events, the insured must show that the damage at issue was the "result of an unforeseen, unexpected or unusual act." *Moss v. Protective Life Insurance Co.*, 203 Ga.App. 389, 417 S.E.2d 340, 341 (1992). Simply put, this test looks to whether the insured should have appreciated the likelihood of injury from its conduct. *See Moss*, 203 Ga.App. at 389, 417 S.E.2d at 341. If so, it cannot be deemed an accident. *Id.*

The underlying matters involve allegations that Centennial acted with a conscious disregard for the rights and safety of its residents, that such actions lead to

38

injuries that were foreseeable and that the injuries allegedly suffered resulted from intentional decisions by Centennial that were grossly negligent, willful, wanton, reckless, malicious and/or intentional conduct. Lieberman Decl., Exs. M-V (See pages 9-11, *supra*, for references to particular claims). None of these acts are of the type that can be said to have taken place without Centennial's expectation or foresight. In fact, it has been alleged that some of Centennial's actions, including insufficient staffing and failure to follow applicable government regulations, was by design. Evanston, therefore, submits that it is entitled to a declaratory judgment stating that it is not obligated to defend or indemnify any matters that involve conduct that was not accidental, as required by the policy's insuring agreement.

In addition to the requirements of the insuring agreement, the policy specifically excludes coverage for liability arising out of the willful or intentional violation of the "Rights of Residents." Lieberman Decl., Ex. A. "Rights of Residents" is a defined term in the policy, referring to any right granted to nursing home residents by state or federal law regarding Centennial's business as a resident health care facility, as well as the rights of residents included in the United States Department of Health and Welfare Regulations governing participation of Intermediate Care Facilities and Skilled Nursing Facilities. *Id.* Again, the allegations

39

in the complaints against Centennial include claims that it regularly willfully and intentionally violated various state and federal regulations in operating its facilities. Lieberman Decl., Exs. M - V (see pages 9-11, *supra*) . This conduct, in turn, allegedly resulted in the damages alleged by plaintiffs. Such allegations fall within the clear and unambiguous wording of this exclusion and thus are not covered by the policy. As such, Evanston seeks a declaration that is not obligated to provide coverage for any matters that implicate this exclusion.

Finally, the claims against Centennial also contain allegations of emotional distress and related damages. Lieberman Decl., Exs. M - V (see pages 9-11 *supra*). Such claims, however, do not constitute "bodily injury," as that term is defined by the policy. Pursuant to the policy, bodily injury is limited to "bodily injury, sickness or "disease." As the Georgia courts have recognized, this does not include non-physical, emotional or mental harm. *Nationwide Mutual Fire Ins. Co. v. Somers,* 264 Ga. App. 421, 591 S.E.2d 430 (2003); *Presidential Hotel v. Canal Ins. Co.,* 188 Ga. App. 609, 373 S.E.2d 671 (1988). It is thus respectfully submitted that any claims involving allegations of emotional distress and similar injures are not covered by the policy. Moreover, as the existence of bodily injury is required by the insuring agreement, Centennial is obligated to establish that the matters at issue involve such alleged damage.

40

## CONCLUSION

Based on the foregoing, Evanston   respectfully requests a declaration that it is not obligated to provided coverage for any matters that Centennial contends are covered under the Evanston policy, along with such other and further relief this Court deems proper.

MORRIS, MANNING & MARTIN LLP

By: /s/ David W. Cranshaw, Esq.
_____
David Cranshaw Ga. Bar No. 193450
3433 Peachtree Road N.E.
Atlanta, Georgia 30326

and

TRAUB EGLIN LIEBERMAN STRAUS  LLP

By: _____
Meryl R. Lieberman (pro hac vice) (MR7317)
Jonathan R. Harwood (pro hac vice) (JH 9060)
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532

ATTORNEYS FOR PLAINTIFF

41