IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, )<br>   Plaintiff, )<br> v. )<br> )<br>CENTENNIAL HEALTHCARE CORP., )<br>GENERAL STAR INDEMNITY COMPANY, )<br>NATIONAL UNION FIRE INSURANCE )<br>COMPANY OF PITTSBURGH, PA and )<br>AMERICAN INTERNATIONAL SPECIALTY )<br>LINES INSURANCE COMPANY, )<br>   Defendants. )<br>_____)<br> )<br>CENTENNIAL HEALTHCARE CORP., )<br>  Plaintiff-in-Counterclaim )<br> v. )<br> )<br>EVANSTON INSURANCE COMPANY )<br>  Defendant-in-Counterclaim )<br>_____)<br> )<br>GENERAL STAR INDEMNITY COMPANY )<br>  Cross-Claimant )<br> v. )<br> )<br>CENTENNIAL HEALTHCARE CORP. )<br>  Cross-Respondents )<br>_____) | Case No.<br>1:05cv2012-WSD |

**GENERAL STAR INDEMNITY COMPANY'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING THE JUANITA RHINE CLAIM**

 General Star Indemnity Company ("General Star"), by and through its

attorneys, hereby submits the following Memorandum of Law in Support of

Its Motion for Partial Summary Judgment Against Centennial Healthcare Corp. ("Centennial"), on the issue of indemnity coverage for the Juanita Rhine claim.

# I

# INTRODUCTION

General Star seeks a summary adjudication that its two policies of Commercial General Liability and Healthcare Facility Professional Liability insurance, covering Centennial with respect to operations at the "Winona Manor Nursing Home Center" (the "Facility"), provide *no* indemnity coverage for the claims brought by the estate of a former patient at the Facility, Juanita Rhine.

The reason the General Star policies provide no coverage is simple: Any bodily injury claims the Rhine estate may have had against Centennial during the General Star policy periods are time-barred, with the possible exception of claims arising during the last eleven days of the last General Star policy. As to those eleven days, Centennial has failed to meet its burden of proving Ms. Rhine sustained any injury or damages for which it might be held liable. Since Centennial can never be liable for any injury to Ms. Rhine during the General Star policy periods, General Star is entitled to

a judicial declaration that it has no potential indemnity obligation to Centennial relating to the Rhine claim.

## II

## FACTUAL BACKGROUND

### A.     Ms. Rhine's Stay At The Insured Nursing Home

According to the underlying complaint, Juanita Rhine became a patient at the "Winona Manor" facility in Winona, Mississippi, during October 1998.[1]  Affidavit of B. Gerard Cordelli in Support of General Star Indemnity Company's Statement of Material Facts in Support of its Motions for Partial Summary Judgment Regarding the Alma Houston and Juanita Rhine Claims (hereinafter "Cordelli Aff."), Exhibit N, at ¶ 2 of the Complaint filed in the underlying action.  She left the facility and was hospitalized June 11, 2002, where she died on July 1, 2002.  *Id.*  According to the underlying complaint, Ms. Rhine received negligent care during her residency at the Facility, resulting in various bodily injuries such as bed sores and skin infections, at unspecified times.  *Id.* at ¶ 17.  One such infection necessitated amputation of her left leg during 2002, and Ms. Rhine died a few weeks later.  Cordelli Aff. ¶ 22.

---

[1] Winona Manor's records indicate Ms. Rhine actually moved into Winona Manor November 11, 1998.  However, the discrepancy is immaterial to the issues raised by this motion.

### B. The Underlying Action

Ms. Rhine's estate, acting through her "personal representative", filed the underlying action entitled *Estate of Juanita Rhine v. Centennial Health Care Management, et al.*, in the Circuit Court of Montgomery County, Mississippi, Case No. 2004-0171-CV-M (the "Rhine Action"), on August 31, 2004. *See*, General Star Indemnity Company's Statement of Uncontroverted Material Facts in Support of its Memorandum of Law in Support of its Motion for Partial Summary Judgment Regarding the Alma Houston and Juanita Rhine Claims ("Separate Statement") at Fact No. 7. The underlying complaint asserts claims for negligence, medical malpractice, and fraud, all arising from injuries allegedly sustained by Ms. Rhine during her residency at the Facility. Cordelli Aff. at Ex. N.

### C. The General Star Policies

General Star issued two policies of Commercial General Liability and Healthcare Facility Professional Liability insurance to Centennial Healthcare Corporation and various other Named Insureds. Policy No. IYG 367505 provided coverage for the period from July 15, 1999 to July 15, 2000. Separate Statement at Fact No. 1. Policy No. IYG 370361 covered the period from July 15, 2000 to December 31, 2000. Separate Statement at Fact No. 2.

## III

## ANALYSIS

A.  **Summary Judgment Is Appropriate Where The Non-Moving Party Fails To Produce Evidence Of An Essential Element Of Its Case**

Under Fed. Rules Civ. Pro. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden

of proof. The moving party is entitled to a judgment as a matter of law if there are no genuine issues of material fact." *Id.* at 322.

### B. Bodily Injury or Damages Arising Out of a Professional Incident Occurring After The General Star Policy Period Are Not Covered

Under the General Star policies, the occurrence of "bodily injury" or a "professional incident" resulting in damages *during the policy period* is a prerequisite for coverage under the General Star policies' Insuring Agreements. Specifically, the policies' Insuring Agreements state:

1.   *Insuring Agreement.*

>   a.   *We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. . . .*
>
>   b.   *This insurance applies to bodily injury and property damage only if:*
>   
>   \*\*\*\*\*\*\*\*\*\*
>   
>   *(2)*   ***The bodily injury or property damage occurs during the policy period.***

Affidavit of John G. Carroll in Support of General Star Indemnity Company's Statement of Material Facts in Support of its Motions for Partial Summary Judgment Regarding the Alma Houston and Juanita Rhine Claims (hereinafter "Caroll Aff.") at Exs. A-B (emphasis added).

6

The policies' Insuring Agreement for Coverage P, "Health Care Facility Professional Liability", as amended by Endorsement No. 2, similarly provides:

> 1. *Insuring Agreement*
>
>    a.  *We will pay those sums that the insured becomes legally obligated to pay as damages because of a professional incident to which this insurance applies . . . .*
>
>    b.  *This insurance applies to damages only if:*
>
>    **********
>    (2)  ***The professional incident takes place during the policy period.***

Carroll Aff. at Exs. A-B (emphasis added).

Any injuries or damages sustained by Ms. Rhine after the second policy's December 31, 2000 expiration are accordingly not covered, as a matter of law.

### C. **Any Rhine Bodily Injury Claims During The General Star Policy Periods Are Time-Barred**

In the underlying action, Ms. Rhine's estate seeks damages for injuries occurring between October 1998, when Ms. Rhine moved in to Winona Manor, and July 1, 2002, when she died. Cordelli Aff. Ex. N. These claims are subject to the two year statute of limitations provided by Mississippi Code Annotated Section 15-1-36(2). That section provides, in relevant part:

7

> *For any claim accruing on or after July 1, 1998 . . . no claim in tort may be brought against a . . . institution for the aged or infirm . . . for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered . . . .*

Here, the last General Star policy expired December 31, 2000. Separate Statement at Fact No. 2. Any lawsuit seeking damages for injuries sustained by Ms. Rhine occurring before expiration of the policy accordingly had to be filed within two years, by December 31, 2002. Centennial, however, filed for Chapter 11 bankruptcy protection on December 20, 2002, just eleven days before the statute of limitations would have run on claims for injury during the General Star policy period. Separate Statement at Fact No. 6. Under 11 USC § 108(c), the statute of limitations was tolled until the automatic bankruptcy stay was lifted on August 31, 2004. Separate Statement at Fact No. 7.

The Rhine estate filed the underlying state court action against Centennial the same day the stay was lifted, August 31, 2004. Separate Statement at Fact No. 7. By operation of § 108(c)'s tolling provisions, that filing was timely *only* as to claims for bodily injury occurring on or after December 20, 2000. Claims arising December 19, 2000 and earlier were not preserved, because they were already time-barred by the time Centennial

8

filed its bankruptcy petition, and by its own, express terms, § 108(c)'s tolling provisions apply *only* to claims which are not already time-barred when the bankruptcy petition is filed.[2]

At most then, with respect to bodily injuries occurring during any General Star policy period, Centennial is potentially liable only for injuries occurring during the narrow, eleven day window between December 20, 2000 and December 31, 2000, when the last General Star policy expired. Only bodily injuries during this brief window can even potentially trigger coverage under any General Star policy. Any claims for bodily injury occurring before December 20, 2000 are time-barred, so the insured will never be liable, and General Star's indemnity obligation can never arise. Injuries occurring after December 31, 2000 are not time-barred, but they are outside the General Star policy periods, and are accordingly not covered under those policies.

---

[2] Section 108(c)'s tolling provisions state: "Except as provided in section 524 of this title 11 USCS § 524, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title 11 USCS § 1201 or 1301, ***and such period has not expired before the date of the filing of the petition***, then such period does not expire until the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title 11 USCS § 362, 922, 1201 or 1301, as the case may be, with respect to such claim." (Emphasis added).

9

As to injuries potentially occurring during the eleven day window between December 20th and 31st, 2000, Centennial has produced *no* evidence, in response to discovery in this coverage action, to establish that Ms. Rhine sustained any injury for which Centennial might be held liable. Separate Statement at Fact No. 8. The insured has the initial burden of bringing its claims within the policy's basic insuring agreement. *JLM Enterprises, Inc. v. Houston General Ins. Co.,* 196 F. Supp. 2d 1299, 1311 (S.D. Ga. 2002); *Progressive American Ins. Co. v. Horde*, 577 S.E.2d 835, 837 (Ga. Ct. App. 2003); *Allstate Ins. Co. v. Smith*, 597 S.E.2d 500, 502 (Ga. Ct. App. 2004); *see also Jordan v. National Accident Ins. Underwriters, Inc.*, 922 F.2d 732, 735 (11th Cir. 1991).

The occurrence of a "bodily injury or "professional incident" resulting in damages *during the policy period* is a prerequisite for coverage under the General Star policies' Insuring Agreements. Centennial accordingly has the burden of demonstrating such an occurrence if it expects to be entitled to indemnity coverage.[3] General Star propounded extensive discovery demanding Centennial's disclosure of any and all facts, witnesses, and documents relating to Ms. Rhine's care, and her estate's claim in the

---

[3] The duty to indemnify, as contrasted with the duty to defend, is embodied in the policies' Insuring Agreements, where General Star promises to "pay those sums that the insured becomes legally obligated to pay as damages" due to specified triggering events or occurrences. See, *supra*, at pages 6-7 of this Memorandum.

10

underlying action, which might tend to implicate coverage under the General Star policies. Separate Statement at Fact No. 8. Centennial's responses were devoid of *any* reference to actual injuries sustained by Ms. Rhine during the critical period between December 20th and 31st, 2000. *Id.*

The Supreme Court made clear in *Celotex*, *supra*, that summary judgment is appropriate where the non-moving party has failed, after a reasonable opportunity for discovery, to produce admissible evidence establishing an essential element they will bear the burden of proving at trial. *Celotex v. Catrett, supra*, 477 U.S. at 322. Here, pursuant to the applicable Mississippi statue of limitations, the occurrence of an injury between December 20, 2000 and December 31, 2000 is an element essential to Centennial's liability in the Rhine Action, and therefore, to its demand for indemnity coverage. Only a bodily injury during this eleven day period would avoid the statute of limitation bar, and thus expose Centennial to a potential liability, while still falling within General Star's policy period. Centennial, as the insured, bears the burden of establishing the applicability of the General Star policies, and will accordingly need to affirmatively prove, if it is to avoid summary judgment, that Ms. Rhine was in fact injured during this eleven day period.

General Star, on the other hand, need not prove a negative – that Ms. Rhine did *not* sustain injury between December 20th and 31st, 2000, to prevail on this motion. Fed. R.Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 322-323. Centennial has been given every opportunity during discovery to establish that any aspect of the Rhine claim falls within the policy's coverage agreement. Centennial has failed to do so, and General Star is now entitled to a declaratory judgment that, as a matter of law, it owes Centennial no indemnity for the Rhine claim.

## IV

## **CONCLUSION**

As a matter of law, General Star has no indemnity obligation toward Centennial for bodily injury occurring after its policy period. Claims for injuries occurring during General Star's policy period are all time-barred, except for a narrow, eleven day period. The insured has failed to produce any evidence that Ms. Rhine sustained any such injury during that brief period. General Star is now entitled to a judicial declaration that it has no indemnity obligation in connection with the Rhine action. Alternatively, General Star is entitled to a declaration that indemnity coverage under its policies is strictly limited to claims arising from bodily injuries sustained between December 20, 2000 and December 31, 2000.

Respectfully Submitted,

THE COVERAGE LAW FIRM, PLLC

/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com

-and-

TROUTMAN SANDERS LLP

Thomas R. Walker, Esq.
Georgia Bar No. 732755
Troutman Sanders, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
404.885.3685 telephone
404.962.6738 facsimile

Co-Counsel for General Star Indemnity Company

# CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2006, I electronically filed the above with the Clerk of Court using the CM/EF system which will send electronic notification of such filing to counsel of record at the below electronic mail addresses:

David W. Cranshaw, Esq.
Robert C. Threlkeld, Esq.
Morris Manning & Martin
3343 Peachtree Road, N.E.
1600 Atlanta Financial Center
Atlanta, GA 30326-1044
dwc@mmmlaw.com
rthrelkeld@mmmlaw.com

Robert Matthew Martin, Esq.
Donald Harvey Crawford, II
Paul Hastings Janofsky & Walker
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30308-2222
404.815.2205
mattmartin@paulhastings.com

Henry E. Scrudder, Jr., Esq.
Teddy L. Sutherland, Esq.
Sommers, Scrudder & Bass, LLP

900 Circle 75 Parkway
Suite 850
Atlanta, GA 30339-3084
770.612.9200
tsutherland@ssblaw.net

Jonathan R. Harwood, Esq.
Meryl Lieberman, Esq.
Traub, Eglin, Lieberman, Straus,LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
   914.347.2600
jharwood@tels.com

Thomas Walker, Esq.
Troutman Sanders
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA 30308-2216
thomas.walker@troutmansanders.com

THE COVERAGE LAW FIRM, PLLC
/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com