IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, )<br>        Plaintiff, )<br>  v. )<br> )<br>CENTENNIAL HEALTHCARE CORP., )<br>GENERAL STAR INDEMNITY COMPANY, )<br>NATIONAL UNION FIRE INSURANCE )<br>COMPANY OF PITTSBURGH, PA and )<br>AMERICAN INTERNATIONAL SPECIALTY )<br>LINES INSURANCE COMPANY, )<br>        Defendants. )<br>_____)<br> )<br>CENTENNIAL HEALTHCARE CORP., )<br>     Plaintiff-in-Counterclaim )<br>  v. )<br> )<br>EVANSTON INSURANCE COMPANY )<br>     Defendant-in-Counterclaim )<br>_____)<br> )<br>GENERAL STAR INDEMNITY COMPANY )<br>     Cross-Claimant )<br>  v. )<br> )<br>CENTENNIAL HEALTHCARE CORP., )<br>     Cross-Respondent )<br>_____) | Case No.<br>1:05cv2012-WSD |

**GENERAL STAR INDEMNITY COMPANY'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING THE ALMA HOUSTON CLAIM**

General Star Indemnity Company ("General Star"), by and through its

attorneys, hereby submits the following Memorandum in Support of Its

Motion for Partial Summary Judgment Against Centennial Healthcare Corp. ("Centennial"), on the issue of indemnity coverage for the Alma Houston claim.

# I

## **INTRODUCTION**

General Star seeks a summary adjudication that its two policies of Commercial General Liability and Healthcare Facility Professional Liability insurance, covering Centennial with respect to operations at the "Lafayette Healthcare Center" nursing home (the "Facility"), provide *no* indemnity coverage for the claims brought by the estate of a former patient at the Facility, Alma Houston.

Alma Houston died from complications of a hip fracture, sustained in a fall at the Facility *a full seven months after General Star's coverage had expired*. In the underlying action, Ms. Houston's estate blames the nursing home's negligence for the fall which ultimately led to Ms. Houston's death. General Star's occurrence-based policy, however, provides coverage only for occurrences of bodily injury or professional incidents leading to damages *during the policy period*. The relevant injury and damages here – Ms. Houston's hip fracture and the ensuing complications allegedly leading to her death – indisputably occurred well *after* the expiration of the last

General Star policy period.  Accordingly, as a matter of law, the General Star policies provide no indemnity coverage for any settlement or judgment in the underlying Houston action.

## II

## **FACTUAL BACKGROUND**

### A. **Ms. Houston's Ultimately Fatal Fall Occurred Seven Months *After* The General Star Policy's Expiration**

Alma Houston, an elderly woman suffering from dementia, was moved into one of the insured's Florida nursing homes, Lafayette Healthcare Center, on June 23, 2000, only six months before the December 31, 2000 expiration of the second, and last, General Star policy.  See Affidavit of B. Gerard Cordelli in Support of General Star Indemnity Company's Statement of Material Facts in Support of its Motions for Partial Summary Judgment Regarding the Alma Houston and Juanita Rhine Claims (hereinafter, "Cordelli Aff.") at Ex. A, ¶ 6 of the Complaint filed in the underlying action.  See also General Star Indemnity Company's Statement of Uncontroverted Material Facts in Support of its Memorandum of Law in Support of its Motions for Partial Summary Judgment Regarding the Alma Houston and Juanita Rhine Claims (hereinafter, "Separate Statement") at Fact No. 2.  On July 22, 2001 – *a full seven months after the last General Star policy had expired* – she fell and fractured her hip.  *See*, Separate Statement at Fact No.

3. She was hospitalized for hip surgery immediately after the fall (between July 30 and August 6, 2001), and then returned to the Facility. Soon after, on September 25, 2001, she was found cyanotic and unresponsive in her room, and was moved to another, unrelated nursing facility, where she died on October 13, 2001 – nearly a year after expiration of General Star's final policy period.[1] See Separate Statement at Fact Nos. 2 and 4. See also Cordelli Aff. at Ex. A, ¶ 6 of the Complaint filed in the underlying action. Ms. Houston's death certificate lists her immediate cause of death as cardiac arrest, brought about by sepsis (a systemic bacterial infection) from an abscess on her fractured hip. See Separate Statement at Fact No. 4.

B.      **The Underlying Action**

Ms. Houston's estate, acting through her "personal representative", filed the underlying action entitled *Estate of Alma Houston v. Lafayette Healthcare Investors, L.C. d/b/a Lafayette Healthcare Center*, Lafayette County Circuit Court No. 2003-25CA (the "Houston Action"), in 2003. See

---

[1] For the purposes of this motion only, General Star assumes, *arguendo*, that both of its policies may potentially be triggered for a duty to defend the underlying action. However, Centennial is not a named defendant in that action; only Lafayette Health Investors, L.C. d/b/a Lafayette Healthcare Center ("Lafayette") is named as a defendant therein. See Cordelli Aff. at Exhibits A and B. However, while Lafayette is an additional insured under the first General Star policy (pursuant to endorsement number seven (7) thereto), it is neither a named nor additional insured under the second policy. See Exhibits A and B to the Affidavit of John G. Carroll in Support of General Star Indemnity Company's Statement of Material Facts in Support of its Motions for Partial Summary Judgment Regarding the Alma Houston and Juanita Rhine Claims (hereinafter "Carroll Aff.").

Cordelli Aff. at Exs. A and B. The underlying complaint asserts claims under Fla. Stat. § 400.023, the civil enforcement statute for the "nursing home patient's bill of rights" codified in Fla. Stat. § 400.022.[2] *Id.*

### C.     The General Star Policies

General Star issued policy No. IYG 367505 (the First Policy) to Centennial Health Care Corporation and various other Named Insureds for the policy period from July 15, 1999 to July 15, 2000. Separate Statement at Fact No. 1. General Star issued policy No. IYG 370361 (the Second Policy) to Centennial Health Care Corporation and various other Named Insureds for the policy period from July 15, 2000 to December 31, 2000. Separate Statement at Fact No. 2.

Both policies' Insuring Agreement for Coverage A, "Bodily Injury and Property Damage Liability", states in pertinent part:

*1.     Insuring Agreement.*

> *a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. . . .*

---

[2] Under Section 400.23, the "personal representative" of a deceased nursing home resident may sue for (1) damages caused by negligence which did not cause the resident's death; or (2) negligence or other rights violations which did cause the resident's death. If the personal representative sues for negligence which resulted in death, then he or she must elect between survival damages under Fla. Stat. § 46.021, or wrongful death damages under Fla. Stat. § 786.79. Ms. Houston's personal representative in the underlying action has sued under both prongs, for (1) negligence not resulting in death; and (2) negligence resulting in death, but with respect to the second prong, has not yet elected whether to pursue survival or wrongful death damages.

> b. *This insurance applies to bodily injury and property damage only if:*
>
> \*\*\*\*\*\*\*\*\*\*
>
> (2) **The bodily injury or property damage occurs during the policy period.**

See Carroll Aff. at Exs. A, B (emphasis added).

The policies' Insuring Agreement for Coverage P, "Health Care Facility Professional Liability", as amended by Endorsement No. 2, similarly provides:

> 1. *Insuring Agreement*
>
> a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of a professional incident to which this insurance applies . . . .*
>
> b. *This insurance applies to damages only if:*
>
> \*\*\*\*\*\*\*\*\*\*
>
> (2) **The professional incident takes place during the policy period.**

Carroll Aff. at Exs. A, B (emphasis added).

### III

### ANALYSIS

**A. <u>Summary Judgment Is Appropriate Where The Non-Moving Party Fails To Produce Evidence Of An Essential Element Of Its Case</u>**

Under Fed. Rules Civ. Pro. 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  The moving party is entitled to a judgment as a matter of law if there are no genuine issues of material fact."  *Id.* at 322.

    **B.**    **The Insured Has Failed To Meet Its Burden Of Establishing That Bodily Injury or a Professional Incident Resulting in Damages Occurred "During The Policy Period"**

The insured has the initial burden of bringing its claims within the policy's basic insuring agreement. *JLM Enterprises, Inc. v. Houston General Ins. Co.,* 196 F. Supp. 2d 1299, 1311 (S.D. Ga. 2002); *Progressive American Ins. Co. v. Horde*, 577 S.E.2d 835, 837 (Ga. Ct. App. 2003); *Allstate Ins. Co. v. Smith*, 597 S.E.2d 500, 502 (Ga. Ct. App. 2004); *see also Jordan v. National Accident Ins. Underwriters, Inc.*, 922 F.2d 732, 735 (11th Cir. 1991).

Here, the occurrence of "bodily injury or a "professional incident" resulting in damages *during the policy period* is a prerequisite for coverage under the General Star policies' Insuring Agreements. Centennial accordingly has the burden of demonstrating such an occurrence if it expects to be entitled to indemnity coverage.[3] On the undisputed facts of this case, Centennial has not, and cannot, meet its burden.

General Star propounded extensive discovery demanding Centennial's disclosure of any and all facts, witnesses, and documents relating to Ms. Houston's care, and her estate's claim in the underlying action, which might tend to implicate coverage under the General Star policies. Separate Statement at Fact No. 5. Centennial's responses were devoid of *any*

---

[3] The duty to indemnify, as contrasted with the duty to defend, is embodied in the policies' Insuring Agreements, where General Star promises to "pay those sums that the insured becomes legally obligated to pay as damages" due to specified triggering events or occurrences. See, *supra*, at pages 5-6 of this Memorandum.

8

reference to evidence of bodily injury or professional incidents resulting in damages involving Ms. Houston during the General Star policy period. Separate Statement at Fact No. 5.  Instead, the only relevant incident disclosed by Centennial was Ms. Houston's July 22, 2001 fall, which fractured her hip and, according to the death certificate (not produced by Centennial), ultimately led to her death.  Separate Statement at Fact Nos. 3-4.  That fall and hip fracture, of course, occurred a full seven months after the second, and last, General Star policy had expired.  Separate Statement at Fact No. 2.  As a matter of law, then, Centennial cannot meet its burden of establishing a covered occurrence "during the policy period".

The Florida appellate court's decision in *Forry v. Scottsdale Insurance Company*, 899 So.2d 1260, 1261 (2005), is squarely on point, and controlling.  Like this case, *Forry* involved coverage for a wrongful death and "nursing home patient's rights" action under Fla. Stat. § 400.023.  The underlying action was brought by the estate of a deceased patient of a nursing home insured by Scottsdale.  Like the policies here, the Scottsdale occurrence-based policy was triggered only by bodily injury "during the policy period". *Id.* at 1261.  The deceased in *Forry* had lived in the insured nursing home for seven years.  The insurer had provided coverage for only the first year.  The underlying plaintiff's discovery responses revealed that:

9

> [T]he relevant incidents occurred from 1996 to 2001 [well after the 1994 expiration of the Scottsdale policy]. There was *no other evidence in the record that any relevant event or injury took place during the period of time when Scottsdale Insurance Company's policy provided coverage.* Thus, even if a violation of a nursing home resident's rights can be classified as a continuing tort, any tort in this case did not occur or begin until after the end of the period of coverage provided by the insurance issued by Scottsdale Insurance Company." *Id*. (Emphasis added).

The court, accordingly, affirmed the grant of summary judgment for the insurer. *Id.*

Here, as in *Forry*, there is no evidence in the record of any "relevant event or injury" until Ms. Houston's fall in July 2001 – well after expiration of the last General Star policy. Thus here, as in *Forry*, the insured has failed to meet its burden of establishing a covered occurrence during the policy period. Accordingly, regardless of whether there may be a duty to defend based upon the allegations of the underlying complaint, General Star is nonetheless entitled to judgment as a matter of law on its claim for a judicial declaration that its policies provide no indemnity coverage for any settlement or judgment in the underlying Houston Action.

## IV

## <u>CONCLUSION</u>

Resolution of this coverage dispute could not be simpler. General Star has no indemnity obligation toward Centennial for injury occurring

10

after its policy period.  There is no dispute that Ms. Houston's unfortunate fall and hip fracture, and the ensuing complications which allegedly led to her death, all occurred well after expiration of the last General Star policy. Centennial has had every opportunity, through discovery in this action and otherwise, to produce evidence of a covered occurrence involving Ms. Houston during the General Star policies.  It has failed to meet its burden, and General Star is now entitled to judgment as a matter of law.

    Respectfully Submitted,

THE COVERAGE LAW FIRM, PLLC

/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com

-and-

TROUTMAN SANDERS LLP

Thomas R. Walker, Esq.
Georgia Bar No. 732755

Troutman Sanders, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
404.885.3685 telephone
404.962.6738 facsimile

Co-Counsel for General Star
Indemnity Company

# CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2006, I electronically filed the above with the Clerk of Court using the CM/EF system which will send electronic notification of such filing to counsel of record at the below electronic mail addresses:

David W. Cranshaw, Esq.
Robert C. Threlkeld, Esq.
Morris Manning & Martin
3343 Peachtree Road, N.E.
1600 Atlanta Financial Center
Atlanta, GA 30326-1044
dwc@mmmlaw.com
rthrelkeld@mmmlaw.com

Robert Matthew Martin, Esq.
Donald Harvey Crawford, II
Paul Hastings Janofsky & Walker
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30308-2222
404.815.2205
mattmartin@paulhastings.com

Henry E. Scrudder, Jr., Esq.
Teddy L. Sutherland, Esq.
Sommers, Scrudder & Bass, LLP

900 Circle 75 Parkway
Suite 850
Atlanta, GA 30339-3084
770.612.9200
tsutherland@ssblaw.net

Jonathan R. Harwood, Esq.
Meryl Lieberman, Esq.
Traub, Eglin, Lieberman, Straus,LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
   914.347.2600
jharwood@tels.com

Thomas Walker, Esq.
Troutman Sanders
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA 30308-2216
thomas.walker@troutmansanders.com

THE COVERAGE LAW FIRM, PLLC
/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com