IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

EVANSTON INSURANCE COMPANY,

      Plaintiff,

v.

CENTENNIAL HEALTHCARE CORP.,
GENERAL STAR INDEMNITY
COMPANY, NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA and AMERICAN
INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY,

      Defendants.

CIVIL ACTION NO. 1:05cv2012-WSD

CENTENNIAL HEALTHCARE CORP.,

      Plaintiff-in-Counterclaim,

v.

EVANSTON INSURANCE COMPANY,

      Defendant-in-Counterclaim.

CENTENNIAL HEALTHCARE CORP.,

      Cross-Claimant,

v.

GENERAL STAR INDEMNITY
COMPANY, NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA and AMERICAN
INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY,

      Cross-Respondents.

## DEFENDANT CENTENNIAL HEALTHCARE CORP.'S MEMORANDUM IN OPPOSITION TO EVANSTON INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant, Centennial Healthcare Corp. ("Centennial"), respectfully files this Memorandum in Opposition to Evanston Insurance Company's Motion for Summary Judgment:

### I.     PRELIMINARY STATEMENT

Evanston Insurance Company ("Evanston") seeks a declaratory judgment concerning its Commercial General Liability Policy 00GLP1005196, issued to Centennial for the policy period December 31, 2000 to December 31, 2001 (the "Evanston Policy"). Before responding to Evanston's motion, two preliminary points should be made.

First, the judgment that Evanston seeks likely will have no financial or other impact upon Centennial. As noted in Evanston's Memorandum of Law in Support of its Motion for Summary Judgment ("Evanston's Memorandum"), during the Evanston policy period, various former patients at Centennial facilities, or their estates, asserted personal injury claims against Centennial. The prosecution of those claims was stayed by Centennial's Chapter 11 bankruptcy filing on December 20, 2002. Centennial's Third Amended Joint Plan of Reorganization

(the "Plan") was confirmed on June 22, 2004.[1]  Under the Plan, claimants could elect between a "Distribution Option" or an "Insurance Option."  Those electing the Distribution Option could seek to recover from a fund established under the Plan.  Once the fund is depleted, however, Centennial has no further obligation to respond to any judgment, and, upon the Bankruptcy Court's determination that it has engaged in the liquidation process in good faith, Centennial has no further obligation to pay defense costs.

The election, or deemed election, of the "Insurance Option" constitutes an irrevocable waiver by the claimant of any right to receive a distribution under the Plan from the bankruptcy estates.  The election, or deemed election, of the Insurance Option also constitutes an irrevocable waiver of any right to pursue any claim or cause of action arising prior to the Plan's confirmation date against Centennial or any "Related Third Party," except for the sole purpose of establishing a right to receive applicable proceeds of any insurance policy under which such Related Third Party is insured.  Thus, as a practical matter, the only constituencies with a financial stake in this dispute are the individual claimants themselves, and they are not parties to this case.

Second, a review of Evanston's Memorandum fails to reveal any

---

[1]     Copies of the Confirmation Order and Plan are attached as Exhibits 1 and 2 to Centennial's Answer and Counterclaim and Cross-Claim for Declaratory Judgment filed September 30, 2005.

controversy over the terms or language of the Evanston Policy. Basically,

Evanston asks the Court to declare that the Evanston Policy "means what it says."

For example, Evanston notes that the policy period extends from December 31,

2000 to December 31, 2001, and, therefore, does not cover claims first asserted

after the filing of Centennial's bankruptcy petition on December 20, 2002. *See*

Evanston's Memorandum, pp. 9, 32. Centennial has never contended otherwise.

Similarly, Evanston argues that no coverage exists for "[l]iability arising out of the

willful or intentional violation of 'Rights of Residents.'" *See* Evanston's

Memorandum, pp. 14, 39. Centennial agrees. Finally, Centennial does not dispute

that the Evanston Policy "limits coverage to matters that occurred after the policy's

Retroactive Date." *See* Evanston's Memorandum, p. 13. Given these facts,

Centennial questions the extent to which there is an "actual controversy" to grant

this Court subject matter jurisdiction under 28 U.S.C.A. § 2201, particularly given

that the persons against whom Evanston will seek to assert these policy defenses,

the claimants themselves, are not parties to this case, and no decision of this Court

will be binding upon them.

Although Centennial denies that the majority of Evanston's arguments are

the proper subject of declaratory relief, Centennial will respond to them below.

For the Court's convenience, Centennial concedes that the Evanston Policy does

not cover the following:

- claims that have been voluntarily dismissed by the plaintiffs, *see* Evanston's Memorandum, p. 7;

- claims that have been settled, either through the use of the mediation process or resolutions achieved by other insurers, *id.*;

- claims that were asserted after the filing of Centennial's bankruptcy petition on December 20, 2002, and, therefore, outside the policy period of the Evanston Policy, *see* Evanston's Memorandum, pp. 9, 32; and

- claims involving injuries that allegedly occurred prior to the Evanston Policy's Retroactive Date, *see* Evanston's Memorandum, pp. 13, 34-36.

Since the foregoing issues are not disputed, Centennial will not address them hereafter.

## II.    STATEMENT OF FACTS

### A.    The Evanston Policy

The operative provisions of the Evanston Policy are not in dispute. The policy period extends from December 31, 2000 to December 31, 2001. The coverage includes "bodily injury" and "property damage." "Bodily injury" is defined as "bodily injury, sickness or diseased sustained by a person including death resulting from any of these at any time."

Evanston's coverage is further limited as follows:

b.   This insurance applies to "bodily injury" and "property damage" only if:

  (1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  (2)   The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown on the Declarations or after the end of the policy period; and

  (3)   A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with paragraph c. below, during the policy period or any EXTENDED REPORTING PERIODS (Section V).

c.   A claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

  (1)   When notice of such claim is received and recorded by any insured or us, whichever comes first; or

  (2)   When we make settlement in accordance with paragraph 1.a. above. (*See* Evanston's Memorandum, pp. 10-11.)

Finally, the Evanston Policy's insuring agreement was amended by endorsement to include a $1 million self-insured retention (the "SIR Endorsement"). Pursuant to the SIR Endorsement:

  1.   The total limit of the Company as stated in the policy declarations shall apply excess of the retained limit

(herein called the Self-Insured Retention) as stated in the endorsement, and the Named Insured agrees to assume the retained limit:

Self Insured Retention:   $ <u>1,000,000</u>      per occurrence
                          $ _____ per claim

Annual Aggregate Retention:   $ ___ N/A _____

2.   The Company's obligation under this policy applies only to the amount in excess of the Self-Insured Retention, Your bankruptcy, insolvency, or inability to pay the Self-Insured Retention shall not increase our obligation under the policy.

The Insured shall have the obligation to provide, at his own expense, proper defense and investigation of any claim and to accept any reasonable offer of settlement within the Self-Insured Retention. The insured's obligation to provide for his own defense is terminated upon exhaustion of the Self-Insured Retention referenced above. In the event there is any other insurance, whether or not collectible, applicable to an occurrence, claim or suit within the Self-Insured Retention, the Insured must make actual payment for the full Self-Insured Retention amount before the limits of insurance under this policy apply. **Compliance with this clause is a condition precedent for coverage under this policy. In the event of the failure of the Insured to comply with this clause, no loss, cost or expense shall be payable by the Company.** (*See* Evanston's Memorandum, pp. 8-9 (emphasis in original).)

## B.   Centennial's Bankruptcy Proceedings

As noted above, under the Plan, claimants could elect between a "Distribution Option" or an "Insurance Option." Those who made or were deemed to have made a timely Distribution Option election, could recover from a fund

established under the Plan. Once the fund is depleted, however, Centennial has no further obligation to respond to any judgment, and upon the Bankruptcy Court's determination that it has engaged in the liquidation process in good faith, Centennial has no further obligation to pay defense costs.

The election or deemed election of the "Insurance Option" constitutes an irrevocable waiver by the claimant of any right to receive a distribution under the Plan from the bankruptcy estates. The election or deemed election of the Insurance Option further constitutes an irrevocable waiver of any right to pursue any claim or cause of action arising prior to the Plan's confirmation date against Centennial or any "Related Third Party," as defined in the Plan, except for the sole purpose of establishing a right to receive applicable proceeds of any insurance policy under which such Related Third Party is insured.

Under the Plan, any claimant who elected or is deemed to have elected the Insurance Option may, after the Plan's Effective Date, continue litigation that was pending on the petition date against Centennial or any Related Third Party or may commence litigation against Centennial and any Related Third Party in a court of competent jurisdiction; *provided, however*, that any such litigation may be maintained solely for the purpose of establishing a right to receive applicable insurance proceeds, if any. Neither Centennial, its bankruptcy estate, nor any

Related Third Party has any personal liability (except to the extent of applicable insurance proceeds) on account of any judgment entered in such litigation.

Alternatively, the Plan allows a claimant to commence litigation directly against any insurance company if such a cause of action is available under non-bankruptcy law. The Plan provides that the insurance company or companies providing insurance coverage for an applicable policy period shall be responsible for the defense of any such claim and the payment of any judgment, subject to the provisions and limits of any applicable insurance policy and applicable non-bankruptcy law. The Plan further provides that if and to the extent that insurance proceeds are not available for the payment of the claim (whether because of exhaustion, defenses to coverage, insolvency, or any other reason), Insurance Option claimants shall have no claim against Centennial or any Related Party or any right to any distribution under the Plan.

## III.   ARGUMENT AND CITATION OF AUTHORITIES

### A.   Evanston's Arguments Regarding Specific Categories of Claims

#### 1.   Disallowed and Expunged Claims

At page 7 of Evanston's Memorandum, Evanston identifies nine claims that were disallowed or expunged in their entirety during the course of Centennial's Chapter 11 proceeding. Evanston argues, without authority or explanation, that the

claims are "no longer the subject of coverage under the Evanston policy and need not be considered by the Court." *See* Evanston's Memorandum, pp. 7-8.

A claim in bankruptcy may be disallowed for myriad reasons, including, without limitation, the failure to file supporting documentation or to file a proof of claim within a court-imposed bar date. Such a ruling precludes the claimant from participating in any distribution under the debtor's plan. The claims listed on page 7 of Evanston's Memorandum were expunged as "Untimely/Unfiled Claims." *See* EVANSTON 02816-20. Evanston offers no explanation why such a claimant would be precluded from asserting a claim directly against Evanston or any other insurer. As noted above, the Plan contemplates such direct claims to the extent permitted under applicable state law. The fact that these claims were disallowed for purposes of the Plan should not therefore afford a coverage defense under the Evanston Policy.

### 2.    Claims Alleging Willful Injury and/or Intentional Misconduct

As noted above, Evanston's Memorandum correctly points out that the Evanston Policy would not cover "[l]iability arising out of the willful or intentional violation of 'Rights of Residents.'" *See* Evanston's Memorandum, p. 14, 39. Evanston further notes that no coverage exists for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured…" *See* Evanston's Memorandum, p. 13. Evanston then identifies numerous claims which

- 10 -

include *allegations* that would fall within these covering provisions and/or exclusions. *See* Evanston's Memorandum, pp. 14-17.

Centennial concedes that *if those allegations are proven*, Evanston may have a coverage defense. Each of the claims that Evanston identifies, however, also contain allegations of "bodily injury" resulting from mere negligence, which are covered under the Evanston Policy. The fact that some of a claimant's allegations, if proven, would not be covered under the Evanston Policy does not void coverage as to the entirety of the claimant's claims.

### 3.    Claims Alleging Emotional Harm and Related Damages

Evanston notes that certain claims against Centennial include allegations of emotional distress and related damages. *See* Evanston's Memorandum, p. 40. Evanston argues that its coverage is limited to "bodily injury" and that this does not include non-physical, emotional or mental harm. *Id.*  In support of its contentions, Evanston first cites *Nationwide Mutual Fire Ins. Co. v Somers*, 264 Ga. App. 421, 591 S.E.2d 430 (2003). In *Nationwide,* the claimant alleged that the insured, Sunrise Memorial Gardens ("Sunrise"), had desecrated the claimant's son's grave with cigarette butts and animal feces and that Sunrise had breached its perpetual care contract by permitting the grave to be littered with trash. The insurer, Nationwide Mutual Fire Insurance Co. ("Nationwide"), asserted that these

type damages were excluded from the policy.  Nationwide reasoned that the policy

covered only "bodily injury."  The Court agreed:

> We do not find, however, that Sunrise is entitled to be
> indemnified under Coverage A for damages to Somers based on
> nonphysical injuries, i.e., emotional distress or injured feelings.
> "Used in an insurance policy, the term 'bodily injury' means
> just that -- 'bodily injury.'  It pertains to physical injury to the
> body.  It does not include non-physical, emotional or mental
> harm.  And it cannot be equated with the broader term
> 'personal injury.'"  Thus, under Coverage A there would be no
> duty to indemnify for Somers's claims for emotional distress or
> injured feelings.  (264 Ga. App. at 426-427 (citations omitted).)

Evanston also cites *Presidential Mutual Fire Ins. Co. v. Somers*, 188 Ga.

App. 609, 373 S.E.2d 671 (1988).  In *Presidential*, employees of the insured sued,

charging the insured and another employee with sexual harassment, fraud and

implied contract claims.  The insurer refused to defend or to indemnify.  The

insured then sued the insurer, seeking damages for breach of its policy.  The trial

court granted summary judgment in favor of the insurer.  The Court of Appeals

affirmed, holding that the policy only covered loss for bodily injury; that the

employees' claims were for sexual harassment, fraud and implied contract claims;

and did not seek damages for actual physical harm that would have been covered

under the policy.  The court held:

> Used in an insurance policy, the term "bodily injury" means just
> that -- "bodily injury." It pertains to physical injury to the body.
> It does not include non-physical, emotional or mental harm. . . .
> And it cannot be equated with the broader term "personal
> injury."  (188 Ga. App. at 611 (citations omitted).)

To state the obvious, neither case cited in Nationwide's Memorandum applies to the typical claim asserted against Centennial, which includes physical injury and/or illness.  Similarly, Evanston has not identified any claim for purely emotional harm, without accompanying physical injury or illness.  Nevertheless, in the event that some claimant hereafter asserts such a claim, Centennial agrees that the Evanston Policy would not cover it.

**B.     Evanston's Reliance Upon The Self-Insured Retention Endorsement**

Section I of Evanston's Memorandum is based the SIR Endorsement. Evanston argues that "Centennial must make actual payment for the full SIR amount before the limits of insurance under the Evanston policy apply." *See* Evanston's Memorandum, p. 18.[2]  Evanston further asserts that its obligations under the Evanston Policy "cannot be increased by Centennial's bankruptcy, insolvency or inability to pay the SIR." *Id.*  Finally, Evanston notes that the SIR Endorsement is part of the insuring agreement and that compliance with the endorsement is a condition precedent to coverage under the Evanston Policy. *See*

---

[2]     *Georgia Mutual Ins. Co., Inc. v. Rollins, Inc.*, 209 Ga. App. 744, 746-747, 434 S.E.581, 584 (1993), cited at page 19 of Evanston's Memorandum, admittedly stands for the proposition that where a policy contains a "self-insured retention" and the insurer's obligation applies only to the amounts in excess of the self-insured retention, the insured in not insured until the self-insured retention is satisfied.

Evanston's Memorandum, p. 18-19.  Centennial does not quarrel with any of these

propositions.

Evanston seeks the following declaration:

> [I]t is not obligated to provide a defense or indemnification
> with respect to any matters allegedly covered by its policy
> unless and until Centennial pays one million dollars as to each
> such claim pursuant to its obligations under the SIR.  If that
> condition does not occur, Evanston is relieved of any and all
> obligations under the policy.  (*See* Evanston Memorandum, p.
> 24.)

Centennial does not deny the substance of the proposed declaration.

Centennial does not contend that Evanston has an obligation to defend any claim

until the conditions of the SIR Endorsement have been met.  Further, Centennial

does not claim that the SIR has been met, as of today, with respect to any claim

asserted during the policy period of the Evanston Policy.  In the event, however,

that this condition of the Evanston Policy is met hereafter, Centennial should be

entitled to assert whatever rights it may have under its contract with Evanston.  The

Court should keep in mind that Centennial has not refused to defend any

Distribution Option claims.  Centennial is defending them and charging the costs to

the fund with Bankruptcy Court approval.  Centennial has only declined to

continue to pay defense costs for Insurance Option claims.

## C.    Evanston's Arguments Regarding the Insured's Duty to Defend

Section II of Evanston's Memorandum quotes from the following policy

language:

> The Insured shall have the obligation to provide, at his
> own expense, proper defense and investigation of any
> claim and to accept any reasonable offer of settlement
> within the Self-Insured Retention. The insured's
> obligation to provide for his own defense is terminated
> upon exhaustion of the Self-Insured Retention referenced
> above. In the event there is any other insurance, whether
> or not collectible, applicable to an occurrence, claim or
> suit within the Self-Insured Retention, the Insured must
> make actual payment for the full Self-Insured Retention
> amount before the limits of insurance under this policy
> apply. **Compliance with this clause is a condition**
> **precedent for coverage under this policy. In the event**
> **of the failure of the Insured to comply with this**
> **clause, no loss, cost or expense shall be payable by the**
> **Company.** (*See* Evanston's Memorandum, pp. 9, 25-26
> (emphasis in original).)

Evanston correctly notes that under the Plan, Centennial has no obligation to

defend any claims that elected, or were deemed to have elected, under the

"Insurance Option." *See* Evanston's Memorandum, p. 28. Evanston also is correct

that the Plan relieves Centennial of any obligation to defend any "Distribution

Option" claim once the settlement fund has been depleted, subject to the

Bankruptcy Court's determination that Centennial has engaged in the liquidation

process in good faith. *Id.* Evanston concludes Section II as follows:

"Centennial's clear failure to satisfy the obligations set out in the SIR Endorsement

thus entitles Evanston to a finding that it does not have any coverage obligation whatsoever." *See* Evanston's Memorandum, pp. 29-30.

Centennial agrees that if Centennial refuses to defend a specific claim that falls within the coverage of the Evanston Policy, then that refusal would provide Evanston a defense to coverage. Evanston's Motion, however, is premature. Centennial continues to defend Distribution Option claims and may, despite the provisions of the Plan, be called upon to defend a specific Insurance Option claim. In the event that the sum of that defense and any ensuing liability exceeds the $1 million SIR, Centennial may assert a claim under the Evanston Policy. Evanston's attempt to obtain a blanket discharge of its contractual obligations, based upon events and occurrences that have not yet occurred, is inappropriate.

### D.     No "Actual Controversy" Exists Between Evanston and Centennial

A District Court's statutory jurisdiction to issue a declaratory judgment hinges upon the existence of an "actual controversy with its jurisdiction." 28 U.S.C.A. § 2201. Only where such an "actual controversy" exists, "may [the Court] declare the rights and other legal relations of any interested party seeking such declaration. . . . " *Id.*

On September 30, 2005, Centennial asserted a Counterclaim against Evanston and Cross-Claims against General Star Indemnity Company ("General Star") and others. In its Counterclaim and Cross-Claims, Centennial sought an

adjudication of the rights of the parties under the Plan.  On November 28, 2005, General Star filed its Motion to Dismiss Centennial's Cross-Claim.  General Star argued that Centennial's Cross-Claim failed to allege any dispute or controversy between Centennial and General Star.  *See* Motion to Dismiss at p. 6.  The Court granted General Star's motion.

Evanston's Motion for Summary Judgment suffers from the same defect. First, Evanston has failed to identify any controversy over the terms or language of the Evanston Policy.  Instead, Evanston asks the Court to apply unambiguous language to various categories of claims, based upon circumstances that have occurred or may occur hereafter.

More fundamentally, Centennial "no longer has a dog in this fight."  The recourse for any successful claimant against Centennial will be limited to any available insurance coverage.  If any claimant attempts to assert a claim against Evanston, any decision of this Court construing the Evanston Policy will have no collateral estoppel or *res judicata* effect.  Given these undisputed facts, this case is not one where the Court should exercise its jurisdiction and issue a meaningless order.

## IV.   CONCLUSION

For the foregoing reasons, Centennial requests that this Court deny Evanston's Motion.

Dated:  January 5, 2007                    By:    /s  R. Matthew Martin
                                              R. Matthew Martin
                                              Georgia Bar No. 473450
                                              Donald H. Crawford
                                              Georgia Bar No. 141753
                                              PAUL, HASTINGS, JANOFSKY &
                                              WALKER LLP
                                              600 Peachtree Street, N.E., Suite 2400
                                              Atlanta, GA  30308-2222
                                              Telephone:(404) 815-2400
                                              Facsimile: (404) 815-2424
                                              mattmartin@paulhastings.com
                                              donaldcrawford@paulhastings.com

                                              *Attorneys for Defendant/Plaintiff-in-*
                                              *Counterclaim/Cross-Claimant,*
                                              *Centennial Healthcare Corp.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

EVANSTON INSURANCE COMPANY,

     Plaintiff,

v.

CENTENNIAL HEALTHCARE CORP.,
GENERAL STAR INDEMNITY
COMPANY, NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA and AMERICAN
INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY,

     Defendants.

CIVIL ACTION NO. 1:05cv2012-WSD

CENTENNIAL HEALTHCARE CORP.,

     Plaintiff-in-Counterclaim,

v.

EVANSTON INSURANCE COMPANY,

     Defendant-in-Counterclaim.

CENTENNIAL HEALTHCARE CORP.,

     Cross-Claimant,

v.

GENERAL STAR INDEMNITY
COMPANY, NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA and AMERICAN
INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY,

     Cross-Respondents.

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2007, I electronically filed the

Memorandum in Opposition to Evanston Insurance Company's Motion for

Summary Judgment with the Clerk of Court using the CM/ECF system which will

send electronic notification of such filing to the following attorneys of record:

> David W. Cranshaw, Esq.
> Robert C. Threlkeld, Esq.
> Morris, Manning & Martin LLP
> 3433 Peachtree Road N.E.
> Suite 1600
> Atlanta, GA 30326
>
> *Counsel for Plaintiff/Counter-Defendant*

I hereby certify that I have mailed by United States Postal Service the

document to the following non-CM/ECF participants:

> Meryl Lieberman, Esq.
> Jonathan R. Harwood, Esq.
> Traub Eglin Lieberman Straus LLP
> Mid-Westchester Executive Park
> Seven Skyline Drive
> Hawthorne, NY 10532
>
> *Of Counsel for Plaintiff/Counter-Defendant*

> /s R. Matthew Martin
> R. Matthew Martin

LEGAL_US_E # 73866319.1