IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | NO. 1:05-CV-2012-WSD |
| CENTENNIAL HEALTHCARE CORP., | : | |
| GENERAL STAR INDEMNITY COMPANY, | : | |
| NATIONAL UNION FIRE INSURANCE | : | |
| COMPANY OF PITTSBURGH, PA and | : | |
| AMERICAN INTERNATIONAL SPECIALTY | : | |
| LINES INSURANCE COMPANY, | : | |
| Defendants. | : | |

**EVANSTON INSURANCE COMPANY'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

**David W. Cranshaw, Esq.**
**Georgia Bar No. 193450**
**Morris, Manning & Martin, LLP**
**3343 Peachtree Road, N.E.**
**Atlanta, Georgia 30326**

**and**

**Meryl R. Lieberman, Esq.**
**(pro hac vice) (MR7317)**
**Jonathan R. Harwood**
**(pro hac vice) (JH9060)**
**Mid-Westchester Executive Park**
**Seven Skyline Drive**
**Hawthorne, New York 10532**

**Counsel for Plaintiff**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.     THIS CASE PRESENTS A JUSTICIABLE CASE OR
       CONTROVERSY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.     Claims Made And Reported Requirement . . . . . . . . . . . . . . . . 6

       B.     Expunged Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       C.     Self-Insured Retention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       D.     The Underlying Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.    THE EVANSTON POLICY DOES NOT COVER CLAIMS FOR
       INTENTIONAL CONDUCT OR ALLEGATIONS OF
       EMOTIONAL DISTRESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## **TABLE OF AUTHORITIES**

*The Burlington Insurance Co. v. Puri*, 436 F.Supp.2d 832
(SD MS 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*ACandS, Inc. v. Aetna Casualty & Sur. Co.*, 666 F.2d 819 (3d Cir. 1981) . . . . . 13

*Baker v. Guaranty Nat'l. Ins. Co.*, 223 Ga.App. 11, 476
S.E.2d 797 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Riehl v. Travelers Insurance Co.*, 772 F.2d 19
(3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 13

*Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 81 L.Ed. 617,
57 S.Ct. 461 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Nationwide Mutual Fire Ins. Co. v. Somers*, 264 Ga.App. 421,
591 So.2d 430 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## PRELIMINARY STATEMENT

Evanston Insurance Company ("Evanston") submits this reply memorandum of law in further support of its motion for summary judgment in the within action. In opposition to Evanston's motion, Centennial Healthcare Corp. ("Centennial") asserts two general propositions that it contends are sufficient to defeat the motion for summary judgment. These assertions, which are addressed in more detail below, do not stand up to even the most basic scrutiny.

As an initial point, Centennial contends that this matter does not present a justiciable controversy. This is based, in part, on Centennial's contentions that, as a result of the Third Amended Joint Plan of Reorganization ("the Plan") entered in its bankruptcy proceeding, the judgment sought herein "likely will have no financial or other impact on Centennial" and that "as a practical matter, the only constituencies with a financial stake in this dispute are the individual claimants themselves, and they are not parties to this case." These arguments are equally dubious and belied by Centennial's own substantive arguments. As an initial point, these statements ignore the significant financial impact that a finding of coverage could have on Evanston, rendering this controversy justiciable as a matter of law. Secondly, Centennial's claim that it will not suffer any financial impact is belied by its argument that summary judgment is not appropriate because Centennial may eventually incur

covered costs in some of the underlying matters.  Additionally, Centennial's position

that there is no case or controversy is directly controverted by its answer to the

complaint, where it admitted that this matter involves a justiciable controversy.

Centennial's contention that the absence of the individual claimants as defendants in

this action precludes the issuance of a declaratory judgment is also wholly without

merit.  The claimants, in fact, declined to become involved in this matter and their

absence in no way precludes this court from issuing declaratory relief.

As discussed in detail in Evanston's moving papers, and as set forth below, the

relevant facts and applicable law demonstrate that Centennial cannot establish that

Evanston has any coverage obligations under the policy with respect to the underlying

claims, rendering summary judgment appropriate.

## ARGUMENT

## I.   THIS CASE PRESENTS A JUSTICIABLE
##      CASE OR CONTROVERSY

Centennial's contention that this matter does not present a case or controversy

is not supported by either the facts of this case or the applicable law.  In fact, the

application that the courts have given to the Federal Declaratory Judgment Act

confirms that this matter involves a case or controversy sufficient to implicate this

court's jurisdiction. The federal courts have consistently held that a case is justiciable

when the critical facts are "real, not hypothetical." *Riehl v. Travelers Insurance Co.*,

772 F.2d 19, 22 (3d Cir. 1985).  Put another way, "a declaratory judgment action is

justiciable if 'it can presently be litigated and decided and is not hypothetical,

conjectural, conditional or based upon the possibility of a factual situation that may

never develop.'" *The Burlington Insurance Co. v. Puri*, 436 F.Supp.2d 832, 835 (SD

MS 2006).  Moreover, as the United States Supreme Court has held, a case is

justiciable where the essential facts establishing a right to declaratory relief have

already occurred. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 81 L.Ed. 617,

57 S.Ct. 461 (1937).  In fact, a declaratory judgment can be issued in the absence of

immediate liability for damages or a determination of the insured's actual liability.

-3-

*Riehl*, 772 F.2d at 22-23.

In *Riehl*, which involved questions of coverage for environmental damage, the court found that a justiciable controversy existed where the insured had already dumped the waste and the contamination had leached off the property. 772 F.2d at 22. Here, numerous individuals have asserted claims against Centennial for alleged negligence and other mistreatment of patients in Centennial facilities. The conduct at issue has already transpired, the dates of the alleged conduct are known, the alleged damages have been stated and Centennial has definitively stated its intentions with respect to the defense and resolution of these claims. These are the essential facts necessary to a determination of Evanston's request for declaratory relief. Consistent with the foregoing precedent, this case thus presents a justiciable controversy.

Moreover, Centennial's general assertion that there is no controversy over the terms or the language of the Evanston policy is a startling admission that Evanston is correct in all respects entitled to summary judgment. In paragraph 3 of the complaint, Evanston alleged that "an actual, justiciable controversy exists among the parties as to which a declaratory judgment setting forth their respective rights and obligations under the subject insurance policy is necessary and appropriate." November 11, 2006 Declaration of Meryl R. Lieberman, Exhibit A at ¶3. In its

-4-

answer to the complaint, Centennial admitted that "an actual controversy exists between Centennial on the one hand and Evanston and the Other Insurers on the other hand." Harwood Aff., Ex. D at ¶3. Centennial's thus admits two striking facts - - that this case presents a justiciable case or controversy sufficient to invoke this court's jurisdiction and that the terms of the Evanston policy are clear and unambiguous.

The examples proffered by Centennial in support of its claim that no case or controversy exists in fact establishes the predicate facts supporting summary judgment. Centennial contends, for example, that there is no dispute over the following points: that the Evanston policy was in effect between December 31, 2000 and December 31, 2001; that the Evanston policy does not cover claims first made after the bankruptcy petition was filed; that the Evanston policy does not cover claims involving events that occurred prior to the policy's December 31, 2000 retroactive date: and that the policy does not cover liability arising out of willful or intentional acts. The fact that the terms of an insurance policy are clear and unambiguous and Centennial concedes this, does not negate this court's ability to apply the terms to underlying claims and decide the rights and obligations of the parties under the policy.

## A. Claims Made And Reported Requirement

Centennial admits the effective period of the Evanston policy, and its claims made and reported nature. (Centennial Healthcare Corp.'s Memorandum In Opposition to Evanston Insurance Company's Motion for Summary Judgment at 2.) As set out in Evanston's moving papers, the claims made and reported nature of the Evanston policy limits its application to matters that were made and reported during the policy period. Evanston's Memorandum of Law In Support of Motion for Summary Judgment at 30-34.) Centennial's actions after implementation of the Plan, however, demonstrate that it did not accept this limitation in seeking coverage for the underlying claims. After the Plan was approved, Centennial provided Evanston with a list of claims it contended were covered by the Evanston policy ("the claim list"). A copy of this list is annexed as Exhibit G to the November 11, 2006 Lieberman Declaration. This list included an entire section of claims that were designated as "post-petition" claims. Post-petition claims were, by nature, made after Centennial filed its bankruptcy petition on December 22, 2002, almost one year after the policy had expired. They could not, therefore, have been made and reported during the policy period. Centennial, nonetheless, submitted such matters for coverage under the Evanston policy, raising a justiciable issue. Centennial's current admission

-6-

warrants a declaration that Evanston does not have any coverage obligation with respect all post petition claims.

The claims list also contained 73 matters that were designated as pre-petition claims. As discussed in detail in Evanston's moving papers, thirty-seven of these matters were not reported to Evanston during the policy period. These matters are identified in footnote 2 of Evanston's memorandum of law in support of the within motion. Evanston contends that these matters are not covered by its policy and seeks a declaration to that effect, a declaration that it respectfully suggests it is entitled to receive.

## B.   **Expunged Matters**

Centennial's opposition to Evanston's motion for summary judgment further demonstrates the existence of a controversy in the case at bar, as well as Evanston's entitlement to relief. In its motion, Evanston identified several matters that have been expunged by the bankruptcy court and asserted that, as a result, these matters are not entitled to coverage. Centennial disputes this contention, claiming that these matters were expunged as "untimely/unfiled claims."   According to Centennial, this designation has no bearing on whether such matters are covered by the Evanston policy. However, if the expunged matters were not filed in time, or not filed at all,

-7-

they could not possibly be covered by the Evanston policy. In order to be untimely, for bankruptcy purposes, these matters must have been filed after the last date for asserting claims in the bankruptcy proceeding. By extension, this would mean that such claims were filed after the bankruptcy petition was filed, which is clearly after the expiration of the policy period. Such matters, therefore, cannot have been made and reported during the policy period. Centennial's claim that the expunged matters may be entitled to coverage under the Evanston policy despite the claims made and reported requirement of the policy, establishes that the controversy is justiciable, and this court should award summary judgment to Evanston as to the expunged matters. For the foregoing reasons, and those set forth in its moving papers, Evanston requests a declaration that it has no coverage obligation with respect to these matters.

## C.    **Self-Insured Retention**

As set out in Evanston's moving papers, it does not have any coverage obligation for any claim until Centennial has satisfied the policy's $1,000,000 per claim SIR by making actual payments that total this amount, and because this cannot happen, Evanston has no obligation whatsoever with respect to any underlying matter. These payments must be made by Centennial at its own expense. Pursuant to the Plan, Centennial has no obligation to pay defense costs or damages in matters

-8-

that have been designated as Insurance Option claims.[1] Centennial has confirmed this in correspondence to defense counsel handling Insurance Option claims, advising them that it will no longer pay defense costs in such matters. November 11, 2006 Lieberman Decl., Ex. F.

Centennial now contends that Evanston is not entitled to a declaration that it has no coverage obligation with respect to Insurance Option matters because Centennial may, "despite the provisions of the Plan, be called upon to defend a specific Insurance Option claim." Centennial does not explain how it can have an obligation which is at odds with the provisions of the Plan, which govern Centennial's obligations with respect to all claims. Pursuant to the Plan, Centennial has no obligation with respect to such claims and nothing in the Plan provides an exception to this. It is thus clear that Centennial will not be able to satisfy its SIR obligation, and it has not raised a triable issue of fact in this regard. In fact, Centennial argued similarly in opposition to Evanston's motion in the bankruptcy court seeking permission to commence the instant action, claiming that a decision in this case might compel Centennial to perform obligations under the Evanston policy that it has no

_____

[1] The definition of Insurance Option and Distribution Option claims is set out in Evanston's moving papers.

-9-

duty to perform under the Plan. The Bankruptcy Court summarily rejected this argument, noting that such a result would be in violation of the Confirmation Order. January 29, 2007 Declaration of Meryl R. Lieberman Decl., Ex. A at 5. It is equally clear, as set out in Evanston's moving papers, that Centennial's failure to satisfy this or any other condition precedent to coverage establishes Evanston's entitlement to summary judgment that it owes no coverage obligation under the policy.

Centennial's arguments with respect to Distribution Option claims, and their impact on the SIR, are similarly unavailing, because they established both a justiciable controversy and Evanston's entitlement to summary judgment. According to Centennial, the provisions of the SIR do not warrant a finding of no coverage for Distribution Option claims because Centennial is defending such claims and charging the costs to the fund established by the Plan. Settlements and awards in such claims are also paid out of this fund. Centennial thus contends that its payments in such matters could satisfy the SIR, in contradiction of Evanston's position that such matters cannot satisfy the SIR. As such, Centennial contends that it would be inappropriate for this court to determine that the failure to satisfy the SIR warrants a declaration that Evanston has no coverage obligation with respect to Distribution Option claims. Again, this demonstrates both the existence of a controversy and a misapplication of

-10-

the terms of the Evanston policy.

As set forth in detail in Evanston's moving papers, the SIR requires Centennial to provide a defense and pay damages within the SIR "at its own expense." The procedures under the Plan for payment of Distribution Option Claims preclude Centennial from establishing that payments for such claims are at Centennial's "own expense." According to the Plan, all costs and expenses associated with Distribution Option Claims are paid out of what is called the "GL/PL Cash Amount." The GL/PL Cash Amount is defined in the Plan as follows: "(a) $1,050,000, (b) the Excess Auction Proceeds - GL/PL, plus (c) 20% of the Legion Recovery." January 29, 2007 Lieberman Decl., Ex. B at 11. No part of the definition of the GL/PL Cash Amount indicates that it consists of amounts contributed by Centennial or that it will incur $1,000,000 in payments on any particular claim. In fact, the fund is funded in part with insurance proceeds from recovery from Legion, an insolvent insurer. Any payment from the fund, therefore, does not constitute a payment of the SIR by Centennial "at its own expense," as clearly required by the policy. Moreover, the Plan relieves Centennial of any obligation to pay defense costs or indemnity amounts after the GL/PL Cash Amount has been exhausted. Centennial, therefore, will not be able to demonstrate, at any time, that it has satisfied the SIR. This failure is fatal to

-11-

any claim for coverage with respect to a Distribution Option Claim, entitling Evanston to summary judgment that it has no obligation under the policy to cover any underlying matters.

## D. The Underlying Claims

Finally, Centennial's claim that this case is not justiciable because the plaintiffs in the underlying claims are not parties is flat out wrong. As Centennial is well aware, the individual claimants were given every opportunity to intervene as parties to the within action. Prior to commencing the instant proceeding, Evanston sought relief from the Bankruptcy Court's automatic stay. Centennial opposed that request and argued, in part, that the proposed action was deficient because the claimants in the underlying case were not identified as defendants. January 29, 2007 Lieberman Decl., Ex. A at 4. Counsel for many of the underlying claimants appeared at the hearing in Bankruptcy Court and made the same argument. *Id.* at 5-6. To alleviate any concern in this regard, the Bankruptcy Court directed Centennial to put all claimants on notice of the declaratory judgment action and advise them of the opportunity to intervene. *Id.* at 4 and 6. Centennial complied with this directive. November 11, 2006 Lieberman Decl., Ex. B. No plaintiffs, however, have elected to intervene in this action. Having been given notice and the opportunity to do so, the

-12-

underlying claimants would be bound by any decision of this court. Their absence does not negate the justiciable nature of this case.

Additionally, as noted above, the federal courts have held that a declaratory judgment action can present a justiciable controversy where the critical facts have already occurred and the matter does not involve hypothetical questions, regardless of whether an actual claim has been made against the insured. *Riehl v. Travelers Insurance Co.*, 772 F.2d 19. In such situations, the fact that there is no claimant named in the declaratory judgment action does not preclude the existence of a justiciable controversy. Consistent with this, courts have allowed declaratory judgment actions to proceed where the claimants were not parties and their claims had not been finally adjudicated, but the underlying facts and the attendant coverage issues were real. *See, e.g., ACandS, Inc. v. Aetna Casualty & Sur. Co.*, 666 F.2d 819 (3d Cir. 1981); *Riehl*, 772 F.2d 19. Such is the precise case here.

## II.   THE EVANSTON POLICY DOES NOT COVER CLAIMS FOR INTENTIONAL CONDUCT OR ALLEGATIONS OF EMOTIONAL DISTRESS

Evanston's motion for summary judgment also seeks declarations concerning its rights and obligations based on the policy's definition of bodily injury and an exclusion related to the In intentional conduct. In opposing Evanston's motion for

-13-

summary judgment, Centennial contends that Evanston is not entitled to such relief because the claims at issue do not involve solely intentional damage and or solely emotional distress. Centennial's arguments on these issues misinterpret the relief sought by Evanston.

In its motion Evanston seeks, *inter alia*, a declaration that its policy does not provide coverage for any damages that are found to have been intentionally caused. While Evanston has argued that other provisions of the policy entitle it to be relieved of any coverage obligations with respect to the underlying claims, on this particular issue Evanston alternatively seeks a more narrow declaration that, to the extent coverage otherwise exists, which it does not, it has no coverage obligations with respect to intentional injuries. The existence of other, allegedly unintentional injuries in a case does not compel Evanston to provide indemnification for amounts awarded for intentional injuries.

Evanston seeks a similar declaration with respect to claims for emotional distress. As discussed in detail in its moving papers, the definition of "bodily injury" in the Evanston policy does not include emotional distress. Any claims for emotional distress damages would thus not be covered by the Evanston policy. Evanston simply seeks a declaration that, to the extent it has any coverage obligation for underlying

-14-

claims, which it disputes, its obligation would not include coverage for payments related to claims for emotional distress.

Moreover, Centennial's efforts to distinguish the cases cited by Evanston are misguided. In general, Centennial contends that the cases are inapplicable because the plaintiffs in those cases did not suffer any actual bodily harm. In finding that claims of emotional distress do not constitute "bodily injury," as that term is applied in insurance policies, however, the courts did not limit their decisions to cases where only non-physical injury was alleged. In fact, in *Nationwide Mutual Fire Ins. Co. v. Somers*, 264 Ga.App. 421, 591 So.2d 430 (2003), the court found the insurer was obligated to indemnify its insured for actual bodily injury, but not for claims of emotional distress. 264 Ga.App. at 427, 591 So.2d at 435. Similarly, in *Baker v. Guaranty Nat'l. Ins. Co.*, 223 Ga.App. 11, 13, 476 S.E.2d 797, 799 (1996), the insured sought coverage for a claim involving allegations of emotional distress damages as well as actual physical injury. The *Baker* court found that the insurer had no duty to indemnify the insured for emotional distress damages, even though it found it may have such an obligation with respect to actual physical injuries. *Id.* Contrary to Centennial's claims, then, the mere existence of claims of physical injury does not preclude an insurer from obtaining a declaration that it has no duty to

-15-

indemnify for claims of emotional distress.

## CONCLUSION

Based on the foregoing, and the arguments put forth in its moving papers, Evanston respectfully requests a declaration of its rights under the Evanston policy with respect to the various general liability and professional liability claims asserted against Centennial, along with such other and further relief this Court deems proper.

MORRIS, MANNING & MARTIN LLP

By: /s/ David W. Cranshaw

David Cranshaw Ga. Bar No. 193450
3433 Peachtree Road N.E.
Atlanta, Georgia 30326

and

TRAUB EGLIN LIEBERMAN STRAUS LLP

By:

Meryl R. Lieberman (pro hac vice) (MR7317)
Jonathan R. Harwood (pro hac vice) (JH 9060)
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532

ATTORNEYS FOR PLAINTIFF

-16-