IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, )<br>            Plaintiff, )<br>v. )<br> )<br>CENTENNIAL HEALTHCARE CORP., )<br>GENERAL STAR INDEMNITY COMPANY, )<br>NATIONAL UNION FIRE INSURANCE )<br>COMPANY OF PITTSBURGH, PA and )<br>AMERICAN INTERNATIONAL SPECIALTY )<br>LINES INSURANCE COMPANY, )<br>            Defendants. )<br>             )<br> )<br>GENERAL STAR INDEMNITY COMPANY )<br>            Cross-Claimant )<br>v. )<br> )<br>CENTENNIAL HEALTHCARE CORP., )<br>            Cross-Respondent )<br>             ) | Case No.<br>1:05cv2012-WSD |

**GENERAL STAR INDEMNITY COMPANY'S REPLY TO
CENTENNIAL HEALTHCARE CORP.'S OPPOSITION TO
GENERAL STAR INDEMNITY COMPANY'S MOTION FOR
PARTIAL SUMMARY JUDGMENT REGARDING THE ALMA
HOUSTON CLAIM**

General Star Indemnity Company ("General Star"), by and through its attorneys, hereby submits the following Reply to the Opposition filed by Centennial Healthcare Corp. ("Centennial") to General Star's Motion for Partial Summary Judgment on the issue of indemnity coverage for the Alma Houston claim.

**I.**              **INTRODUCTION**

General Star seeks a summary adjudication under Count Two of its Cross-Claim to the effect that its two policies of Commercial General Liability and Healthcare Facility Professional Liability insurance provide no *indemnity coverage* for the claims brought by the estate of a former patient, Alma Houston.  Centennial opposes General Star's request on two principal grounds: (1) the resolution of this coverage question will have no impact on Centennial pursuant to the Third Amended Joint Plan of Reorganization (the "Plan"), so there is no "actual controversy" to be adjudicated; and (2) the mere allegations of the underlying complaint are sufficient evidence to support the existence of an obligation to indemnify - and not simply to defend - Centennial for any judgment entered in the underlying Houston Action.  As discussed below, neither contention has any merit, and General Star's Motion for Partial Summary Judgment Regarding the Alma Houston Claim (hereinafter, the "MPSJ") should be granted as requested.

**II.**              **ANALYSIS**

    **A.**   **There Is A Justiciable Controversy Even If Centennial Believes It Has No "Dog In the Fight" Over Coverage.**

In its opposition, Centennial contends that there is no justiciable controversy between it and General Star because it has no "dog in the fight" with respect to the question of whether General Star has any indemnity

coverage for the underlying Houston Action. However, both in its earlier pleadings and in its opposition to General Star's MPSJ, Centennial has taken actions which belie this recently concocted theory. For instance, Centennial admits in its Answer to General Star's Cross-Claim that there is a controversy and dispute between General Star and Centennial with respect to the very question at issue in the instant motion - whether General Star has any indemnity obligations to Centennial with regard to the "Underlying Claims," of which the Houston Action is one. Moreover, Centennial admits that General Star has a justiciable question as to its rights as described in Count Two of General Star's Cross-Claim.

Specifically, in paragraph 21 of its Cross-Claim, under the heading entitled "Controversy Concerning Rights, Obligations and Legal Relations," General Star alleges, *inter alia*, as follows:

> A controversy has arisen and presently exists between Centennial, General Star and the other insurers concerning their rights, status, and/or legal relations, including whether the General Star Policies issued to Centennial provide coverage for any of the Underlying Claims. Specifically, there is a dispute as to what defense and/or indemnity obligations, if any, General Star has to Centennial with regard to the Underlying Claims under the General Star Policies. ...

In its Answer to General Star's Cross-Claim, Centennial admits the allegations of paragraph 21. See, Answer of Centennial Healthcare Corp. to General Star Indemnity Company Cross-Claim for Declaratory Judgment

(hereinafter, "Answer") at paragraph 21. (Docket Entry Document No. 31) (hereinafter, "Doc. No. __").

In addition, Centennial also admits that General Star has a justiciable question with respect to its rights under the Policies. Thus, at paragraph 39 in Count Two of its Cross-Claim, General Star states as follows:

> General Star has a justiciable question as to its rights and/or immunities as demonstrated above. Specifically, General Star has a justiciable question as to whether there is coverage and/or any obligation to indemnify or to defend Centennial with respect to the Underlying Claims under the Policies.

Centennial, in turn, admits the foregoing allegations. See, Answer at paragraph 39. (Doc. No. 31).

The critical allegations of Count Two deal directly with the question put to this Court in General Star's MPSJ herein. Specifically, at paragraph 36 of its Cross-Claim, General Star alleges as follows:

> General Star does not have any obligation to indemnify Centennial as to any of the Underlying Claims were the actual facts and circumstances supporting a finding of liability for damages as against Centennial, if any, considered in light of the terms, provisions, exclusions and/or conditions of the Policies, do not fall within the coverage provided by the Policies, irrespective of whether a duty to defend may exist due to the potential for such coverage.

In response, Centennial's Answer merely states that the Policies speak for themselves. See, Answer at paragraph 36. (Doc. No. 31).

4

Finally, Centennial suggests that this Court should not waste its time ruling on the MPSJ, because no justiciable controversy exists.  However, surely a contention that the Court is without power to issue a declaratory judgment because there is no justiciable controversy between the parties is a matter to be raised as an affirmative defense in an answer, if not in a motion to dismiss at the pleading stage.  Indeed, as Centennial points out, the latter option is precisely what General Star did, successfully, in response to Centennial's Cross-Claim seeking a declaratory judgment as to the operation of the Plan.  Not only did Centennial not file such a motion, it did not raise *any* affirmative defenses in its Answer, much less any based upon the failure to state a cause of action or the lack of a justiciable controversy.  Thus, even if its position were not ill founded, it is too late to be raised for the first time in opposing the MPSJ.

> **B.     Both this Court and the Bankruptcy Court Have Already Ruled That the District Court May Issue a Judgment Declaring  Coverage Under the Policies.**

There is no doubt that this Court understands that General Star's Cross-Claim seeks a declaration of its rights and obligations  under the Policies with respect to the Underlying Claims.  As the Court noted in its Order granting General Star's Motion to Dismiss the Centennial Cross-Claim, "[t]he Complaint and General Star's Cross-Claim, however, do not

ask for the Plan to be interpreted. General Star simply asks the Court to interpret its rights and obligations under the General Star insurance policies." See, Opinion and Order of August 9, 2006 (hereinafter, "August 9 Order") at page 8, footnote 4. Doc. No. 50.

Moreover, it is also clear that this Court expects to do precisely what General Star is asking it to do in its Motion for Partial Summary Judgment. That is, determine whether, under the terms and conditions of the General Star Policies, those Policies apply to particular Underlying Claims. As the Court put it in its Order granting General Star's Motion to Dismiss "[t]he Court's task here is to review the respective insurance policies and decide which policies, if any, apply, and during which time period they apply." See August 9 Order at page 10, footnote 5. Doc. No. 50.

It is also worth noting that the Bankruptcy Court likewise felt that the District Court was empowered to issue a declaratory judgment respecting the rights and obligations of the various insurance companies as against the Debtor. Indeed, that specific question was addressed in the Order Granting in Part and Denying in Part Evanston Insurance Company's Motion to Modify or Construe Discharge Injunction to Allow Evanston to File Declaratory Judgment Action and for Allowance for Permission to File a

Late Filed Proof of Claim (hereinafter, "Bankruptcy Order"), entered in the Bankruptcy proceeding on July 14, 2005.  As set forth therein:

> Section 524(a) is not a bar to the declaratory judgment action proposed by Evanston because it is not asking for permission to collect or recover a debt owed by Debtor.  The declaratory judgment action would only decide Evanston's rights and obligations under the insurance policy.

See Bankruptcy Order at page 4.[1]

Indeed, the Bankruptcy Court addressed other issues alluded to in Centennial's opposition to the MPSJ in its Order as well. In particular, Centennial argued that the Bankruptcy Court should not allow the declaratory judgment to proceed because the personal liability claimants in the Underlying Claims were not party defendants.  In essence, Centennial asserted that, given that it had "no dog in that fight," it did not expect to put up a vigorous defense to the declaratory judgment.  The Bankruptcy Court considered this argument and disposed of it in short order, stating as follows:

> [Debtor's] concern is that those parties in interest who are not aware of such litigation might be bound by the judgment and that this would somehow be unfair to them.  If personal liability claimants have a right to be notified and Evanston fails to do so, they would not be bound by any judgment.  If they do not have a right to be notified, Debtor's concern as the debtor in possession is admirable but irrelevant.  Hence, this objection is without merit.  The simple solution to this problem that will

---

[1] General Star requests that the Court take judicial notice of the Bankruptcy Order pursuant to Federal Rules of Evidence, Rule 201.  For convenience, a copy of the Bankruptcy Order is attached hereto as Exhibit A.

7

>  insure a fair opportunity for such claimants to protect their interests under the policy is for the Court to require Debtor to notify all the personal-injury claimants if and when such a suit is filed by Evanston.

See, Bankruptcy Order at page 4. In fact, pursuant to the Bankruptcy Order, Centennial was required to "promptly notify all members of Class 16 and their attorneys at the latest address set forth in any claim or other document filed in this case," if and when the declaratory judgment complaint was filed. That is precisely what Centennial did upon the filing of Evanston's Complaint for declaratory judgment.[2] More specifically, counsel for Houston received the notice required by the Bankruptcy Court.[3]

Indeed, the fact that the underlying personal injury plaintiffs are not a party to the declaratory judgment action is largely a circumstance of their own choosing.[4] Not only were such plaintiffs notified of the pendency of the

---

[2] General Star requests that the Court take judicial notice of the Affidavit of the Trumbull Group, LLC Regarding the Service of the Notice to Class 16 Claimants of the Commencement of the Declaratory Judgment Actions by Evanston Insurance Company and the exhibits thereto, pursuant to F.R.E. Rule 201. For convenience, a copy of the Trumbull Group Affidavit and accompanying Exhibits is attached hereto as Exhibit B.

[3] See page 1 of 11 of Exhibit B to the Affidavit of the Trumbull Group, LLC, etc., attached hereto as Exhibit B.

[4] The failure to name the underlying plaintiffs as defendants in the declaratory judgment action stemmed, in large part, from the fact that there were over one hundred such plaintiffs. Moreover, at the inception of this action, it was far from clear whether any significant number of said plaintiffs were alleging claims which were proper subjects of a declaratory judgment concerning insurance coverage. Rather than requiring the addition of all of those plaintiffs to the coverage action as parties-defendant, the Bankruptcy Court instead, chose to require that they all be advised of the pendency of the action, so that they could make their own decision on whether to intervene.

8

declaratory judgment, but counsel representing several dozen of those claimants appeared at the hearing on that motion to argue against allowing the declaratory judgment to go forward. The Bankruptcy Court considered and rejected the arguments of said counsel as well, as demonstrated in the Bankruptcy Order, which stated, *inter alia*, as follows:

> Counsel for certain personal liability claimants argued at the hearing on the motion that the declaratory judgment action would violate subparagraph (E) of paragraph 30 of the Confirmation Order, which restrains "any action to interfere with the implementation or confirmation of the plan any [sic] act." The theory is that because some personal liability claimants are currently mediating their claims pursuant to the Plan, the filing of the declaratory judgment action would force then [sic] to attempt to intervene, which in turn could upset the mediation process.
>
> This argument is specious; those claimants are required by the Plan to proceed through the mediating process, whether or not they intervene in another action. Additionally, clarifying Evanston's rights and obligations under the insurance policy would aid, not harm, the mediating process because it would give the negotiating parties a clearer idea of the value of any potential lawsuits should mediation fail.

See Bankruptcy Order at pages 5-6.

In light of the arguments raised, considered, and rejected by the Bankruptcy Court, it is evident that it was not troubled by the fact that the underlying plaintiffs were not named as defendants in the declaratory judgment action, so long as they received notice of its pendency. That notice has been provided, and the language of the notice described the

proceedings in enough detail to allow the claimants such as Houston to make a determination on whether they wished to intervene.[5]  Said underlying plaintiffs have chosen not to intervene to date.  While it is certainly admirable to know that Centennial is concerned over whether those plaintiffs will be bound by a judgment issued by this Court, that concern is no basis for this Court to decline to rule on General Star's MPSJ herein.

    C.    **Centennial Has Failed To Present Any *Evidence* Of A Covered Injury During The Policy Period.**

To withstand General Star's MPSJ, Centennial was required to come forward, at long last, with specific, competent evidence of a relevant "bodily injury" or "professional incident" involving Ms. Houston which occurred before the last General Star policy expired on December 31, 2000.  Such evidence might have included anything from a properly authenticated nursing note or other medical record, to a simple affidavit from someone with personal knowledge of Ms. Houston's condition or treatment before 2001.  Centennial produced no such evidence.  Centennial instead relied entirely on the underlying Houston complaint's unverified *allegation* that Ms. Houston acquired "pressure sores" and suffered "inadequate care"

---

[5] For instance, the Notice states, *inter alia*, as follows: "The purpose of this Notice is to ... inform you that (i) Evanston has commenced the Declaratory Judgment; (ii) you cannot and should not rely upon Centennial to defend your interests in the Declaratory Judgment Action and (iii) you may take such action as you may consider necessary to protect your interests."

10

throughout her stay at the insured facility, beginning in June 2000. Allegations are not *evidence*, however, and an unverified pleading's vague, non-evidentiary contentions are not enough to resist summary judgment.

There is no dispute that at the trial of this coverage action, Centennial, as the insured, will have the burden of proving the Houston claim falls within the Policy's insuring clause. *JLM Enterprises, Inc. v. Houston General Ins. Co.,* 196 F. Supp. 2d 1299, 1311 (S.D. Ga. 2002) (The insured has the initial burden of bringing its claims within the policy's basic insuring agreement); *Progressive American Ins. Co. v. Horde*, 577 S.E.2d 835, 837 (Ga. Ct. App. 2003) (same); *Allstate Ins. Co. v. Smith*, 597 S.E.2d 500, 502 (Ga. Ct. App. 2004) (same).  Nor is there any dispute that to carry its burden, Centennial will need to prove, with admissible evidence – as opposed to mere allegations or argument – the occurrence of a "bodily injury" or "professional incident" *during the policy period*. Centennial Opposition at 3.

Short of trial, in the summary judgment context, the Supreme Court's landmark decision in *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) makes clear that where, as here, the non-moving party (Centennial) bears the burden of proof at trial, the moving party (General Star) is not required to support its motion with affidavits or other material *negating* Centennial's claim of coverage.  Instead, General Star may simply point out to the Court

11

that there is an *absence of evidence* to support Centennial's case. *Id.* at 324 and 331-32; *see also*, *Fitzpatrick v. City of Atlanta*, 2 F.3d 112, 1115 (11th Cir. 1993) ("For issues . . . on which the non-movant would bear the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show – that is, point out to the district court – that there is an absence of evidence to support the non-moving party's case.")

General Star has done precisely that, with the affidavit of B. Gerard Cordelli. As Mr. Cordelli's affidavit explains, General Star propounded exhaustive discovery demanding evidence of a relevant "bodily injury" or "professional incident" involving Ms. Houston during the General Star policy period. Cordelli Aff. ¶ 18. In response, Centennial produced *no evidence* of a such a covered injury or incident at any time before the last General Star policy expired at the end of 2000. Cordelli Aff. ¶¶ 19-20. The only evidence of a relevant injury involving Ms. Houston produced by Centennial referred to her October 2001 fall and hip fracture, related surgery and subsequent death – all of which occurred well after the General Star policy period. *Id.*

Once General Star made its initial showing of the complete absence of evidence of any covered injury during the policy period, the burden shifted to Centennial, in opposing General Star's motion, to come forward with significant, probative *evidence* demonstrating that, despite the lack of evidence in its discovery responses, there had indeed been a relevant "bodily injury" or a "professional incident" involving Ms. Houston during the General Star policy period – in other words before December 31, 2000. *Fitzpatrick*, *supra*, at 1116-17.  In carrying its burden, Centennial was required to either "show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by [General Star]", or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting).

Critically, "Rule 56(e) . . . requires the nonmoving party [Centennial] to *go beyond the pleadings* and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial", while  "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary material listed in Rule 56(c), *except the mere pleadings themselves . . . .*"  *Id.* at 324.

To meet its burden of presenting *evidence* of a covered injury during the General Star policy period, however, Centennial submitted no evidence at all, instead relying entirely on the unverified allegations of a pleading from the underlying Houston Action.  Specifically, Centennial merely pointed out to the Court that the unverified, unsworn state court complaint filed by Ms. Houston's estate included an *allegation* that she "acquired multiple pressure sores and suffered from inadequate care and treatment from the date of her admission on June 23, 2000 through the date of her discharge on September 25, 2001."  Opposition at 8.  Centennial asks the Court to assume this broad allegation might include relevant "bodily injury" or a "professional incident" involving Ms. Houston sometime before the last General Star policy expired.

Even if such an assumption could fairly be made, however, Centennial's citation to the underlying, unverified Houston complaint utterly fails to meet its burden of presenting *evidence* of a covered injury. Allegations contained in a complaint *are not evidence*, and cannot defeat a motion for summary judgment.  *See*, *Celotex*, *supra*, at 324; *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) ("For issues on which the non-moving party will bear the burden of proof at trial, the non-moving party must either point to evidence in the record or present additional evidence

14

'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'").

By definition, the allegations of an unverified pleading are just that – *allegations*. They are not *evidence*.[6] Thus Centennial, as the non-moving party, has proffered no *evidence* whatsoever to oppose General Star's "no evidence" partial summary judgment motion, on an issue Centennial will have the burden of proving at trial – namely, the existence of a covered injury or incident during the policy period. General Star's motion must accordingly be granted.[7]

**IV.**                       **CONCLUSION**

For all of the foregoing reasons, and for those stated in its moving papers, General Star is entitled to a judicial declaration that it has no indemnity obligation in connection with the Houston Action.

---

[6] According to Black's Law Dictionary, an "allegation" is merely "[t]he assertion, claim, declaration, or statement of a party to an action, made in a pleading, setting out what he expects to prove", while "evidence" refers to "[t]estimony, writings, material objects, or other things presented to the senses that are offered to prove the existence or nonexistence of a fact." *Black's Law Dictionary*, (5th ed. 1980).

[7] To avoid confusion, we emphasize that the Houston complaint's allegations may well be enough to trigger General Star's *defense* obligation under the Policies, since the duty to defend is tested by the mere allegations of the underlying complaint. But defense is not the issue here. General Star is defending the Houston claim, and this motion does not address General Star's defense obligation. Rather, this motion seeks a declaration regarding General Star's ultimate duty to *indemnify* Centennial for any liabilities relating to the Houston action. The Houston complaint's allegations are wholly immaterial to indemnity coverage.

Respectfully Submitted,

THE COVERAGE LAW FIRM, PLLC

/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com

-and-

TROUTMAN SANDERS LLP

Thomas R. Walker, Esq.
Georgia Bar No. 732755
Troutman Sanders, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
404.885.3685 telephone
404.962.6738 facsimile

Co-Counsel for General Star Indemnity Company

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2007, I electronically filed the above with the Clerk of Court using the CM/EF system which will send electronic notification of such filing to counsel of record at the below electronic mail addresses:

David W. Cranshaw, Esq.
Robert C. Threlkeld, Esq.
Morris Manning & Martin
3343 Peachtree Road, N.E.
1600 Atlanta Financial Center
Atlanta, GA 30326-1044
dwc@mmmlaw.com
rthrelkeld@mmmlaw.com

Robert Matthew Martin, Esq.
Donald Harvey Crawford, II
Paul Hastings Janofsky & Walker
600 Peachtree Street, N.E.
Suite 2400
Atlanta, GA 30308-2222
404.815.2205
mattmartin@paulhastings.com

Henry E. Scrudder, Jr., Esq.
Teddy L. Sutherland, Esq.
Sommers, Scrudder & Bass, LLP

900 Circle 75 Parkway
Suite 850
Atlanta, GA 30339-3084
770.612.9200
tsutherland@ssblaw.net

Jonathan R. Harwood, Esq.
Meryl Lieberman, Esq.
Traub, Eglin, Lieberman, Straus,LLP
Mid-Westchester Executive Park
Seven Skyline Drive
Hawthorne, New York 10532
   914.347.2600
jharwood@tels.com

Thomas Walker, Esq.
Troutman Sanders
Bank of America Plaza
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA 30308-2216
thomas.walker@troutmansanders.com

THE COVERAGE LAW FIRM, PLLC
/s/ B. Gerard Cordelli
B. Gerard Cordelli, Esq. (Pro Hac Vice)
The Coverage Law Firm, PLLC
1629 K Street, NW
Suite 802
Washington, DC 20016
202.785.4134
202.785.0820 facsimile
bgcordelli@thecoveragelawfirm.com