IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EVANSTON INSURANCE
COMPANY,

                              Plaintiff,

    v.                                            1:05-cv-2012-WSD

CENTENNIAL HEALTHCARE
CORP., GENERAL STAR
INDEMNITY COMPANY,
NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA and
AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY,

                              Defendants.


## OPINION AND ORDER

This matter is before the Court on Plaintiff Evanston Insurance Company's

("Evanston") Motion for Summary Judgment [57], Defendant General Star

Indemnity Company's ("General Star") Motion for Partial Summary Judgment

Regarding the Juanita Rhine Claim [59], and General Star's Motion for Partial

Summary Judgment Regarding the Alma Houston Claim [60].

## I.     FACTUAL BACKGROUND

On August 1, 2005, Evanston filed this action for declaratory judgment

pursuant to 28 U.S.C. §§ 2201-2202.[1]  Evanston seeks a determination regarding

the respective rights and obligations of the parties under an insurance policy which

it issued to Defendant Centennial Healthcare Corp. ("Centennial") in connection

with professional and general liability claims asserted against Centennial by

residents of nursing home facilities Centennial operated ("the Evanston Policy").

The Evanston Policy covered the time period of December 31, 2000 to December

31, 2001.

Defendants General Star, National Union Fire Insurance Company of

Pittsburgh, PA ("National Union"), and American International Specialty Lines

Insurance Company ("AISLIC") also issued insurance policies to Centennial for

different coverage periods which contained different terms and conditions.  On

November 28, 2005, General Star filed a Cross-Claim for declaratory judgment

against Centennial, asking the Court to declare what defense and indemnity

---

[1]  By Order entered July 14, 2005, the Bankruptcy Court granted Plaintiff
Evanston permission to proceed with the filing of its declaratory judgment action
in this Court.  In re Centennial Healthcare Corp., No. 02-74974 [2800].

obligations General Star owes to Centennial for certain lawsuits which Centennial claims trigger the policies issued by General Star.

*Centennial's Bankruptcy*

In December 2002, Centennial filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court, Northern District of Georgia. When Centennial filed its Chapter 11 petition, numerous personal injury claims by residents of Centennial nursing homes were pending against Centennial. These actions generally alleged that Centennial was liable for injury to residents suffered while they were residents at and in the care of Centennial's facilities. These cases were pending in various states throughout the country (the "underlying claims"). The litigation of these personal injury claims against Centennial was stayed as a result of Centennial's bankruptcy filing. In June 2004, the Bankruptcy Court approved a Third Amended Joint Plan of Reorganization (the "Bankruptcy Plan" or "Plan"). The Bankruptcy Plan sets forth a procedure for addressing the underlying claims against Centennial.

Under the Plan, claimants could elect either a "Distribution Option" or an "Insurance Option." Claimants who failed to make a timely election were deemed to have chosen the Insurance Option. The Distribution Option provides a process

-3-

for the Distribution Option claimants to recover from a fund established under the Plan ("the Fund").[2]  Once the Bankruptcy Court determines that Centennial has participated in the Distribution Option process in good faith, under the Plan Centennial's obligation to pay defense costs and settlement amounts is extinguished.

A claimant who elects, or is deemed to have elected, the "Insurance Option" irrevocably waives any right to receive a distribution under the Plan.  Election of the Insurance Option also constitutes an irrevocable waiver of the right to pursue any claim against Centennial or any "Related Third Party"[3] which arose prior to the

_____

[2]  The Distribution Option provided a process for reducing a claim to a recoverable amount.  The claimant first participates in a process to reach a consensual resolution.  If this process is successful, a percentage of the agreed amount is paid according to a formula set forth under the Plan.  The agreed amount is paid out of the Fund.  If this process is not successful, the claimant must litigate his or her claim.  The cost to defend such claims is paid out of the Fund.  Once the Fund is exhausted, the Plan states that Centennial has no further obligation to respond to any judgment.  Centennial does not intend to make any claim or defense cost payments to supplement the Fund.

[3]  The term "Related Third Party" is defined by the Plan as "any present or former officer, director, or employee of the Debtors, any additional insured under any insurance policy issued to the Debtors, and any person who is or may be entitled to indemnification by the Debtors with respect to a particular General Liability Claim or a Professional Liability Claim."  (Bankruptcy Plan, attached to Centennial's Cross-Claim for Declaratory Judgment [4] as Ex. 2, at ¶ 2.88.)

Plan's confirmation date except to establish a right to receive coverage which may be available under any insurance policy under which the Related Third Party is insured.  That is, under the Bankruptcy Plan, Centennial has liability only to the extent of any applicable insurance proceeds.

The Plan allows a claimant to file suit directly against any insurance company if a direct cause of action is available under state law.  The Plan states that any insurance company that provides claims coverage shall be responsible for the defense of any underlying claim and the payment of any judgment, subject to the provisions and limits of any applicable insurance policy and applicable law.  If insurance coverage is not available for the payment of a claim, the Plan precludes Insurance Option claimants from asserting an underlying claim against Centennial or any Related Third Party.

*Evanston's Coverage Obligation under the Evanston Policy*

After the time expired for claimants to choose between the Insurance or Distribution Options, Centennial provided Evanston with a list of claims that it contends triggered the Evanston Policy ("the Election List").  The Election List identified the option each claimant selected or was deemed to have selected and the insurers that Centennial contends have a coverage obligation with respect to each

claim.  The Election List identified 100 claims asserted against Centennial as being covered by the Evanston policy.  Evanston disputes that its policy covers the claims on the Election List.  It argues that because the Plan completely absolves Centennial from any liability to claimants, and the Evanston Policy's Self Insured Retention ("SIR") endorsement requires Centennial to incur, at its own expense, the first $1 million in defense and recovery costs for each claim before the coverage obligations are triggered, Evanston has no further liability under the Evanston Policy because Centennial has not satisfied the SIR for any claim.

*The General Star Policies*

General Star issued two policies of Commercial General Liability and Healthcare Facility Professional Liability Insurance to Centennial and various other named insureds ("the General Star Policies").  The "First Policy" provided coverage for the period from July 15, 1999 to July 15, 2000.  The "Second Policy" covered the period from July 15, 2000 to December 31, 2000.

On February 17, 2003, the estate of Alma Houston, a former resident of Centennial's Lafayette Healthcare Center, filed suit against Centennial in Lafayette County, Florida.  Houston's personal representative alleged that while Ms. Houston was a resident she suffered injuries due to Centennial's negligence.  Ms.

Houston was admitted to Lafayette Healthcare Center on June 23, 2000.  On July 22, 2001, Ms. Houston fell and fractured her hip.  On September 25, 2001, she was discharged from the facility, and Ms. Houston died on October 13, 2001.

On August 31, 2004, the estate of Juanita Rhine, a resident of Centennial's Winona Manor Nursing Home Center since 1998, filed suit against Centennial for negligence resulting in bodily injuries including bed sores and skin infections.  One such infection lead to the amputation of Ms. Rhine's leg during 2002.  Ms. Rhine died on July 1, 2002.

On November 20, 2006, Evanston filed this Motion for Summary Judgment. Evanston argues that Centennial cannot establish that Evanston has any coverage obligations under the policy with respect to the underlying claims, and summary judgment should be granted in its favor.[4]

On November 22, 2006, General Star filed is Motions for Partial Summary Judgment as to the Juanita Rhine Claim and the Alma Houston Claim.  (Rhine MSJ

_____

[4] General Star's declaratory judgment action seeks a coverage interpretation on four other claims in addition to the Houston and Rhine claims.  General Star acknowledged in a conference on June 22, 2007, that these other four claims are not ripe, cannot be evaluated at this time, and that a trial in the underlying cases will probably be necessary to establish the facts.  Put another way, there is no current case or controversy regarding the Policy with respect to those four claims.

[59]; Houston MSJ [60].)  General Star seeks a summary judgment that the two General Star Policies covering Centennial provide no indemnity coverage for the claims brought by the estates of former patients Juanita Rhine and Alma Houston.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court views all facts in the light most favorable to the nonmoving party, but only if there is a genuine dispute as to those facts.  Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In other words, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 259 (1986).[5]

---

[5] Centennial argues in response to both Evanston and General Star's motions that this is an improper case for declaratory judgment because there is no case or controversy.  Because it has no financial liability under the Plan, it asserts it "has no dog in this fight."  Centennial's cursory argument is unconvincing.  The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  The threshold question in cases under the Act is whether a justiciable controversy exists.  Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 272 (1941); U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991) (citations omitted).  Courts possess discretion under the Act to decide whether to declare the rights of the parties.  Wilton v. Seven Falls Co., 515 U.S. 277, 286-87 (1995).  Centennial admitted in its Answer that there was a case or controversy and, in its Response to the pending motions, contests several of Evanston's major arguments and all of General Star's arguments.  Centennial is unwilling to clearly concede the positions advanced by Evanston and General Star.

B.    Evanston's Motion for Summary Judgment

      a.    *The Self-Insured Retention Endorsement*

Evanston first argues that, pursuant to the SIR endorsement to the Evanston policy, Evanston does not have any obligation to defend or indemnify Centennial with respect to any claims unless Centennial has made actual defense or indemnity payments on a particular claim in the $1 million amount required by the SIR. (MSJ [57], at 18.)  Evanston further asserts that the SIR cannot be satisfied by payments from other insurance available to Centennial.  Evanston contends its policy requires Centennial to make SIR payments "at its own expense" and out of its own funds before Evanston's obligations under its policy arise.  (Id.)  Evanston argues that because Centennial is relieved from paying anything under the Insurance Option, and payments on matters under the Distribution Option come from the Fund created in the bankruptcy proceeding,[6] Centennial will not pay $1 million with respect to any of the claims, that the SIR obligation will not be

                            —————————————

There is a sufficient controversy between the parties for the Court to declare the rights of the parties in a declaratory judgment action.

     [6]  Once the Distribution Fund is depleted, the Plan relieves Centennial of making any further payments under the Distribution Option if the Bankruptcy Court determines that Centennial has participated in good faith.

met, thus relieving Evanston from providing coverage under the Policy.  (Id. at 20-21.)

Evanston requests a declaration that "it is not obligated to provide a defense or indemnification with respect to any matters allegedly covered by its policy unless and until Centennial pays one million dollars as to each such claim pursuant to its obligations under the SIR.  If that condition precedent does not occur, Evanston is relieved of any and all obligations under the policy."  (Id. at 24.)

Centennial does not challenge the substance of the proposed declaration.  It admits the SIR is part of the insuring agreement and that compliance with the SIR endorsement is a condition precedent to coverage under the Evanston Policy. (Resp. [64], at 13-14.)  Centennial states further that it does not claim the SIR has been met with respect to any claim, nor does it claim it intends to meet the SIR in the future.[7]  (Id. at 14.)  Centennial does not contest the declaration sought by Evanston, and the Court grants Evanston's motion for a declaratory judgment with regard to the SIR endorsement.

_____

[7] Centennial qualifies its response by stating that "[i]n the event, however, that this [SIR] condition of the Evanston Policy is met hereafter, Centennial should be entitled to assert whatever rights it may have under its contract with Evanston." (Resp., at 14.).  This qualification, while it may provide some comfort to Centennial, unnecessarily confuses the issues before the Court.

      *b.*     *Failure to Defend Claims*

Evanston next argues that because Centennial has no obligation under the

Plan to pay defense costs with respect to Insurance Option claims and the Plan

relieves Centennial from defending any Distribution Option claims once the Fund

has been depleted, Centennial will not, as a practical matter, ever satisfy the

obligations of the SIR endorsement.   Thus, Evanston argues it is entitled to a

broader finding that "it does not have any coverage obligation whatsoever" under

the Policy.  (MSJ, at 30.)

Centennial does not dispute that it has no obligation under the Plan to pay

defense costs with respect to any matters that proceed under the Insurance Option.

Centennial also does not dispute that once the fund established by the Plan for

Distribution Option claims is depleted, Centennial is relieved of any obligation to

pay defense costs or any judgment awarded, provided the Bankruptcy Court finds

that it acted in good faith during the Distribution process.  It also admits that "if [it]

refuses to defend a specific claim that falls within the coverage of the Evanston

Policy, then that refusal would provide Evanston a defense to coverage."  (Resp., at

16.)  Centennial, however, also argues that it continues to defend Distribution

Option claims and "may, despite provisions of the Plan, be called upon to defend a

specific Insurance Option claim."  (Id.)  It argues that "Evanston's attempt to

obtain a blanket discharge of its contractual obligations, based upon events and

occurrences that have not yet occurred, is inappropriate."  (Id.)

As Evanston points out, the Plan provides that all costs and expenses

associated with Distribution Option Claims are paid out of the "GL/PL Cash

Amount."  The GL/PL Cash Amount is defined in the Plan as "(a) $1,050,000, plus

(b) the Excess Auction Proceeds - GL/PL, plus (c) twenty percent (20%) of the

Legion Recovery."  (Bankruptcy Plan, attached to Centennial's Cross-Claim for

Declaratory Judgment [4] as Ex. 2, at ¶ 2.59.)  The definition does not indicate that

any amounts are to be contributed by Centennial, and Centennial does not offer any

evidence of this possibility.  However, the Plan states that once the Fund is

depleted under the Distribution Option, Centennial has no further liability *provided*

the Bankruptcy Court finds that it acted in good faith.  To the Court's knowledge,

this has not yet occurred.  Thus, the Court agrees that it is inappropriate to

completely absolve Evanston from its obligations under its policy based upon

events that have not yet occurred.  The Court declines to grant Evanston's request

for summary judgment that it has no coverage obligation whatsoever.  In the

unlikely event that Centennial does incur $1 million in judgment and defense costs related to a claim covered by the Evanston Policy, it will be entitled to coverage.[8]

     *c.*    *The "Claims Made and Reported" Requirements*

Evanston argues that the Policy is a "claims made and reported" policy, and the only claims against Centennial covered under the Policy are those that were made and reported during the December 31, 2000 to December 31, 2001, policy period.  Evanston asserts that 27 of the claims listed on the Election List fail to satisfy this requirement because they were identified as "post-petition" claims–after Centennial filed for bankruptcy on December 20, 2002.  Thus, Evanston argues that it is "entitled to a declaration that its policy does not provide coverage for any claims made after the filing of Centennial's bankruptcy petition including, but not limited to, those identified as post petition claims on the Election List."  (MSJ, at 32.)

---

[8] The Court would be willing to consider a joint agreement from the parties that Evanston has no coverage obligation whatsoever, but in the event that Centennial meets its SIR obligations for a claim, Centennial may request the Court to revise this Order should Evanston refuse to meet its obligations under the Policy.  This agreement could be entered as a consent order allowing the Court to reopen this case if the agreement is required to be enforced.

Evanston further states that Centennial was required under the Policy to place Evanston on notice of covered matters by providing loss runs, on a quarterly basis, listing all of the claims allegedly affecting the policy.  (Id. at 33.)  In May 2002, Centennial's third party administrator provided the final loss runs with respect to those matters allegedly covered by the Policy.  Evanston argues that Centennial's Election List included at least 37 pre-petition matters that were not reported in the loss runs provided to Evanston.  Thus, it argues that it is entitled to a declaration that it "does not have any coverage obligation with respect to those matters, and any others, not contained within the final loss run or any other notice to Evanston . . . ."  (Id. at 34.)  Moreover, Evanston requests a declaration that it has "no coverage obligation with respect to . . . matters . . . that involve bodily injury that took place prior to the policy's December 31, 2000 retroactive date." (Id. at 36.)

Centennial does not contest that claims first asserted after the filing of Centennial's bankruptcy petition are not covered by the Policy and that claims involving injuries allegedly occurring prior to the policy's retroactive date are not covered.  (Resp., at 4.)  It does not respond to Evanston's requested declaration regarding the loss runs and thus this argument is deemed unopposed.  L.R. 7.1B,

N.D. Ga.  Because Centennial does not contest the declaration regarding the "claims made and reported" arguments, the Court grants Evanston's motion for summary judgment and requests for declaration regarding the "claims made and reported" requirements.

> ### d. Coverage for Accidental Damage and Bodily Injury

Evanston argues that the Policy excludes coverage for bodily injury resulting from intentional conduct or a willful or intentional violation of the "Rights of Residents."[9]  (MSJ, at 37.)  Evanston thus seeks a declaratory judgment that it is not "obligated to defend or indemnify any matters that involve conduct that was not accidental, as required by the policy's insuring agreement" and that it "is not obligated to provide coverage for any matters that implicate [the "Rights of Residents"] exclusion.  (Id. at 39, 40.)  Evanston also asserts that "any claims involving allegations of emotional distress and similar injuries are not covered by the policy."  (Id. at 40.)

---

[9]  The Rights of Residents are defined as those that are granted under any state or federal law regulating resident health care facilities, as well as those included in the United States Department of Health and Welfare Regulations governing such facilities.

-16-

Centennial concedes that if an injury is proved to be the result of intentional conduct, Evanston may have a coverage defense.  Centennial points out, however, that each of the claimants identified by Evanston allege bodily injury resulting from negligence, which is covered under the Evanston Policy, in addition to intentional conduct.  Centennial argues even if a claim asserts allegations which are not be covered, other claims are and thus Evanston is not entitled to a general declaration that it is not obligated to provide any coverage as to the entirety of the claimant's claims.  (Resp., at 11.)  Centennial notes that the typical claim against Centennial includes physical injury or illness, and Evanston has not identified any claim for purely emotional harm.  Centennial agrees that a claim for purely emotional harm without an accompanying physical injury or illness is not covered by the policy.  (Resp., at 13.)

In its Reply, Evanston appears to qualify its request and states that it only seeks the "narrow" declaration that "it has no coverage obligations with respect to intentional injuries."  (Reply [70], at 14.)  Evanston further states that "its obligation would not include coverage for payments related to claims for emotional distress."  (Id. at 15.)  With this clarification, the Court finds there is no disagreement between the parties on this issue, and the Court grants Evanston's

-17-

motion for declaratory judgment that Evanston is not obligated to indemnify for intentional injuries or emotional distress claims.

      C.    <u>General Star's Motion for Partial Summary Judgment on the Rhine Claim</u>

General Star seeks summary adjudication that the two General Star Policies covering Centennial with respect to operations at the Winona Manor Nursing Home Center in Mississippi do not provide indemnity coverage for the claims brought by the estate of former patient Juanita Rhine.[10]  Ms. Rhine became a resident of Winona Manor in 1998.  She left the facility and was hospitalized on June 11, 2002, where she died on July 1, 2002.

---

[10]  General Star originally argued that due to a two-year Mississippi statute of limitations for nursing home negligence claims, claims occurring before December 20, 2000, are time-barred.  Thus, it argues Centennial was at most potentially liable only for injuries occurring during the eleven-day period between December 20, 2000 and December 31, 2000, when the Second General Star Policy expired.  (Rhine MSJ [59], at 9.)  Centennial points out that the applicable statute of limitations was the three-year limitations period for negligence claims.  According to Miss. Code Ann. § 15-1-36(14), the special two-year limitation established "as to institutions for the aged or infirm shall apply only to actions the cause of which occurred on or after January 1, 2003."  Miss. Code Ann. § 15-1-36(14).  The two-year statute of limitations for tort claims against institutions for the aged or infirm does not apply to Ms. Rhine's claim because it arose before 2003.  In its Reply, General Star substantially focused its argument claiming that Centennial must come forward with evidence that Ms. Rhine's injuries occurred during the policy period.

General Star argues that since Centennial has not presented evidence that Ms. Rhine suffered bodily injury or that professional misconduct involving Ms. Rhine occurred before the Second Policy expired, it is entitled to a judicial declaration that it is not obligated to indemnify Centennial for any alleged damages based on the Rhine claim. That is, General Star argues that there is no evidence that Ms. Rhine's injuries occurred during the coverage period of July 15, 1999 to December 31, 2000.

Centennial responds, relying solely on the Rhine Complaint, that the conduct giving rise to Ms. Rhine's injury was allegedly continuing in nature and "occurred throughout Juanita Rhine's stay at [Centennial's] facility." (Resp. to Def. Statement of Material Fact [67], at ¶ 8.) Centennial claims this is sufficient to show the injuries occurred during the Second Policy period. The Court disagrees. Centennial must designate specific facts showing a genuine issue for trial–in this case, that the liability-creating conduct occurred during the time period covered by the General Star policies. Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995) ("In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him," but the purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to

see whether there is a genuine need for trial."). Centennial does not identify any evidence that the bodily injury for which Rhine seeks compensation occurred during the coverage period. Summary judgment on this claim in favor of General Star is appropriate.

      D.    <u>General Star's Motion for Partial Summary Judgment on the Houston Claim</u>

General Star also seeks summary adjudication that the two General Star Policies provide no indemnity coverage for the claims brought by the estate of Alma Houston. Ms. Houston died due to complications from a hip fracture, sustained in a fall at Centennial's facility seven months after General Star's coverage had expired on December 31, 2000. General Star argues that its policies provide no indemnity coverage in the Houston action.

Centennial simply responds that the complaint in the Houston action seeks damages for "multiple falls" and "multiple pressure sores" from the date of Houston's admission on June 23, 2000. Thus, it argues that any claim based upon Houston's care from June 23, 2000, until the expiration of the Second Policy on December 31, 2000, is covered by the General Star Policies. Centennial does not offer any evidence that any injuries occurred during the policy periods. Thus,

Centennial has failed to designate specific facts showing a genuine issue for trial in response to General Star's motion for summary judgment.  Summary judgment should be granted in favor of General Star on the Alma Houston Claim.

Having entered declaratory judgment on these claims, there is no case or controversy with respect to the four remaining claims, and General Star's declaratory judgment action as to these remaining claims is dismissed without prejudice.

## III.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Evanston's Motion for Summary Judgment [57] is **GRANTED** in part and **DENIED** in part.

The Court declares that Evanston is not obligated to provide a defense or indemnification with respect to any matters allegedly covered by its policy unless and until Centennial pays one million dollars as to each such claim pursuant to its obligations under the SIR.  If that condition precedent does not occur, Evanston is relieved of any and all obligations under the policy for such claim or claims. Evanston's policy does not provide coverage for any claims made after the filing of Centennial's bankruptcy petition including, but not limited to, those identified as

post petition claims on the Election List.  Evanston does not have any coverage obligation with respect to those matters, and any others, not contained within the final loss run or any other notice to Evanston.  Evanston has no coverage obligation with respect to matters that involve bodily injury that took place prior to the policy's December 31, 2000 retroactive date.  Evanston is not obligated to indemnify for intentional injuries or emotional distress claims.

**IT IS FURTHER ORDERED** that Defendant General Star's Motion for Partial Summary Judgment Regarding the Juanita Rhine Claim [59], and General Star's Motion for Partial Summary Judgment Regarding the Alma Houston Claim [60] are **GRANTED**.  Because there is no other case or controversy presented by General Star's Cross-Claim no further declaration is warranted and the Cross-Claim [23] is **DISMISSED**.

The Clerk is **DIRECTED** to administratively close this case.

**SO ORDERED** this 12th day of July, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE